PATTERSON ORCHARD COMPANY *v.* SOUTHWEST ARKANSAS
UTILITIES CORPORATION.

Opinion delivered July 8, 1929.

1030

*Lake, Lake & Carlton,* for appellant.

*Abe Collins* and *Arnold & Arnold,* for appellee.

BUTLER, J. The chancery court of Sevier County, on the petition of the Southwest Arkansas Utilities Corporation, rendered its decree in favor of the petitioner condemning a right-of-way across the orchard lands of the Patterson Orchard Company thirty feet in width, for use as a right-of-way for its lines used in the transmission and supply of electricity for public use, and adjudging to the Patterson Orchard Company for its damage

the sum of $1,000. From this decree the Patterson Orchard Company appeals to this court, and to that part of the decree adjudging damages the Southwest Arkansas Utilities Corporation has filed its cross-appeal, and has also asked this court to determine on its cross-appeal the question as to whether a foreign corporation engaged in the business of generating and transmitting electricity for public use, and which has complied with the laws of this State with reference to foreign corporations doing business herein, is authorized to exercise the right of eminent domain.

There are five questions presented to this court for its determination by the appellant, Patterson Orchard Company, which are as follows: (1) Could the appellee, a domestic public utilities corporation, clothed with the power of eminent domain, exercise that power for the benefit of a like foreign corporation which had complied with the general laws of the State prescribing upon what terms a foreign corporation might do business therein? (2) Was the purpose for which a right-of-way was sought to be condemned across the appellant's orchard one to serve a private use and not a public use, and, if the former, was the decree of the chancery court justified by law? (3) Was the right-of-way sought to be condemned necessary in order to enable the appellant or its lessee to perform their functions and duties to the public? (4) Was the chancery court correct in decreeing to appellee a fee simple title in and to the strip of land across the orchard of appellant? (5) Was the damage awarded to appellant adequate?

On its cross-appeal the appellee contends that the damages awarded were not only adequate, but excessive, and against the preponderance of the testimony. Appellee also has asked this court to pass upon the question as to whether or not a foreign corporation, having complied with the general laws of the State with reference to a foreign corporation doing business therein and engaged in the business of generating and transmitting

electricity for public use, has the right to exercise the power of eminent domain and condemn a right-of-way for the purpose of its business.

The appellant, in addition to the questions presented and hereinbefore stated, challenges that part of the decree of the court adjudging the costs against it.

The testimony in this case as to the amount of damages sustained by the appellant is conflicting, but there is no dispute as to the other facts in the case, which are substantially as follows: The Southwestern Gas & Electric Company, a Delaware corporation, after having complied with the statutes of this State, was engaged, among other things, in the transmission of electricity for public use, and prior to the 17th day of March, 1928, owned and operated a transmission line from DeQueen, by way of Horatio, to Foreman, in Sevier County, Arkansas, the right-of-way of which paralleled the public highway and was adjacent thereto. This transmission line was a 33,000-volt capacity. At and before the date mentioned above, the said company was engaged in rebuilding, relocating and increasing the capacity of its high power electric transmission line running from Shreveport, Louisiana, to DeQueen, Arkansas, and had proceeded with this work until it reached the orchard of the appellant, located about three miles south of DeQueen, and, having been unable to obtain the right-of-way further across said orchard, filed its suit in the Sevier Circuit Court by which it sought to condemn said right-of-way for its own use, and, having made the deposit in the sum named by the circuit judge, obtained on said day an order permitting it to enter upon the land of the appellant for the purpose of constructing its transmission line, and, on the same day that the order was obtained, put a large force of men on the work and proceeded with the construction of said line across the appellant's land. On the same day, and a short time after the order had been procured and the work begun, the appellant, learning of this, filed its petition for a revoca-

tion of the order, setting up as grounds therefor the fact that the Southwestern Gas & Electric Company was a foreign corporation, and alleging that it was without authority or right to exercise the right of eminent domain or condemn a right-of-way over the appellant's land. This petition was presented to the judge at about noon on the same day on which the order was made, namely, March 20, and thereupon the judge issued an order holding in abeyance his former order, and setting March 24 for the hearing of the original petition of the Southwestern Gas & Electric Company. A copy of this last order was duly certified by the clerk and served by the sheriff upon the superintendent of the electric company in charge of the work. At that time the electric light poles had been erected across the entire tract, a distance of three-quarters of a mile, and the wires had been unrolled and lay across the orchard and the branches of some of the peach trees, and, after the order revoking the former order was served, the workmen continued to work for about an hour or an hour and a half, attaching the wires to the poles, the reason given for this apparent disobeyance of the order being that the work done after the notice of the revocation of the former order was that the wires might become tangled or damage the trees, and that they might properly be preserved.

On the 21st of March the appellant, Southwest Arkansas Utilities Corporation, was organized with a capital stock of $25,000, divided into 250 shares of the par value of $100 each. The superintendent of the gas and electric company took 248 shares of this stock and two other employees of said electric company took one share each. The purpose for which this company was organized, as stated in its charter, was to generate and transmit electricity for public use. As soon as, or a short time after, its organization and the issuance of its charter, the 248 shares taken by the superintendent of said company were issued to the gas and electric company in exchange for the transmission line extending from the north bank

of Little River over the orchard of appellant to the sub-station of the gas and electric company at DeQueen, and the said line was then leased by the appellee to the gas and electric company. On the 24th day of March, the date set for the hearing of the petition of the Southwestern Gas & Electric Company, the appellee filed its intervention, alleging the purchase from the gas and electric company of all its rights in and to the transmission line constructed by it across the orchard of appellant. On the day of the hearing, after a resolution of the stockholders of the new company had been passed, by which there was adopted for the appellee corporation the route across appellant's orchard which had previously been selected by the gas and electric company, it filed in the office of the circuit clerk of the county its complaint, which is the original complaint in the case at bar, and the original suit and intervention were abandoned. A date was set for the hearing of the complaint and petition filed by the appellee, the 11th day of April, and on that day an order was entered authorizing the appellee to go on the lands of the appellant for the purpose of constructing and maintaining a transmission line, and requiring the appellee to make a deposit of $750 to be used in payment of such damages as might be finally assessed against it, which deposit was accordingly made. The appellant filed its answer, and asked that the cause be transferred to equity, and that it have a permanent injunction against the appellee. Upon a hearing, the chancery court entered a decree, to which reference has been heretofore made.

1. It is urged by the appellant that, under the facts disclosed, the creation of the Southwest Arkansas Utilities Corporation was but a subterfuge for acquiring a right-of-way indirectly for the Southwestern Gas & Electric Company, which could not be done directly because of a constitutional prohibition; that the sole purpose behind the organization of the appellee company was to acquire a right-of-way for the gas and electric com-

pany, and that therefore it had no right to exercise the power of eminent domain for such purpose. It cannot be questioned that one of the reasons, if indeed not the principal one, for the formation of the appellee company was the procurement of a right-of-way for the gas and electric company, but there was also testimony to the effect that said company was organized to serve, and has served, as a developing company for the Southwestern Gas & Electric Company, and that it will own the right-of-way over which the new transmission line shall run until such time as it shall see fit to dispose of this property, and that, while at that time it had no funds available to pay out for development purposes, it expected to get funds from the gas and electric company, or from banking firms, bond issues, or otherwise.

The legal existence of the appellee corporation is not questioned, but it is insisted that the State Constitution prohibits a foreign corporation from exercising the power of eminent domain, and that it cannot take the right as lessee of a domestic corporation, or by other means. Especially would that be true in this case, appellant says, under such circumstances surrounding its organization as are set out above, and cites the cases of *State* v. *Scott,* 22 Neb. 628, 36 N. W. 121, and *Koenig* v. *Chicago, etc. Ry. Co.,* 27 Neb. 699, 43 N. W. 423, which cases apparently sustain the appellant in its contention. Appellant also cites the case of *Simpson* v. *Teftler,* 176 Ark. 1093, 5 S. W. (2d) 350, but which case can have no application to the state of facts presented in the case at bar. The weight of authority, however, is contrary to the rules announced in the 26th and 27th Nebraska reports, *supra,* and sustains the position that, while a foreign corporation might not have authority to exercise the right of eminent domain in the procurement of its rights-of-way, it might cause another company of its own stockholders to be so organized as to have that power, and that, when such subsidiary company has obtained the right-of-way, it may lease its line to the foreign corporation.

In the case of *Lower* v. *C. B. & Q. R. Co.*, 59 Iowa 563, 13 N. W. 718, the court said:

"The evidence shows that the Chillicothe & Chariton Railroad Company has leased the road in question to the Chicago, Burlington & Quincy Railroad Company, and we think that the evidence shows that the former company was organized with the design of procuring a right-of-way and building a road to be used by the latter company. It does not, however, follow that the plaintiffs have been defrauded. The land taken has been taken for public use, and just compensation, as we must assume, has been made to the plaintiffs. Their real ground of complaint, so far as their alleged equity is concerned, is that they have not been allowed to hold the key to the situation in such a way as to enable them to defeat the construction of the road, or obtain more than just compensation. The amount demanded by the plaintiffs was such as to show very clearly that it was graduated without any reference to the real damages sustained, but the supposed exigency of the company. Now, while it sometimes happens that a person can, under the protection of law, practice extortion, it is proper for an intended victim to resort to every legal device to defeat the attempted extortion, and, if he succeeds, his action cannot properly be called fraudulent. The plaintiffs, indeed, do not themselves seem to place much reliance upon the alleged ground of fraud. This appears from the emphasis which they place upon the necessity of construing strictly the powers of a corporation. If we could see that the plaintiffs have been defrauded by the defendants, our way would be very clear. The fact of fraud would entitle the plaintiffs to relief, and it would be of very little consequence what the defendants' powers are. Now, we apprehend that the real question in this case is not a question of fraud, but of power. The plaintiffs, we think, have no right to relief unless they can maintain the correctness of the following proposition: The Chicago, Burlington & Quincy Railroad Company has no power to

condemn the land in question. This being so, no other company can be organized with power to condemn it whose sole object is to aid the Chicago, Burlington & Quincy Railroad Company * * *. If, then, the Chicago, Burlington & Quincy Railroad Company lacks the power to build such road, it is simply because its articles of incorporation do not so provide expressly or by reasonable implication. But the Chillicothe & Chariton Railroad Company can build the road, and that, too, even though it derives all its means from the Chicago, Burlington & Quincy Railroad Company, and builds it with the express design of leasing it to that company.''

In the case of *Postal Tel. Cable Co. of Utah* v. *Oregon S. L. R. Co.*, 23 Utah 474, 65 Pac. 735, the court said:

''After argument the demurrer was overruled by the lower court, and the appellant answered, denying the incorporation of respondent, and basing its defense principally upon an allegation that the respondent is the agent and under the control of the Postal Telegraph Cable Company of New York, a foreign corporation, which has not the power to exercise the right of eminent domain in this State, and which, through the organization of respondent, is seeking to do by indirection that which it cannot accomplish in its own name directly, and that in reality respondent has no separate existence from the Postal Telegraph Cable Company of New York. * * * It is also insisted by the appellant that the respondent is not a corporation either *de jure* or *de facto*. The respondent appears to have complied fully with the laws of Utah. * * * Clearly it is a corporation, and, being such, it is a legal entity (citing cases), and it is granted the right to exercise the power of eminent domain. It may be true that the Postal Telegraph Company of New York is interested in respondent, but that fact does not divest from respondent any of the corporate powers with which it is clothed. There is nothing in the letter, spirit, or policy of the law which pro-

hibits the same persons from forming and conducting two or more different corporations. This same question was before the United States Circuit Court for the District of Idaho. *Postal Telegraph Cable Co.* v. *Ore. S. L. R. Co.*, 104 Fed. 623, is a case upon all-fours with the one at bar. These views are fully sustained by the following authorities (Citing cases)."

*In re N. Y. L. & W. R. Co.* v. *Union Steamboat Co.*, 90 N. Y. 12, 1 N. E. 27, contains this declaration: "The fact that a railroad is leased to another is not fatal to its right to have lands condemned for its benefit, upon a case of necessity shown, even though the lessee road is a corporation foreign to the State."

In 20 C. J. 543, the rule is stated in this language: "The fact, however, that a foreign corporation is interested in a domestic corporation, or owns the greater part of its stock and controls its management, will not prevent the latter from exercising the power of eminent domain." See also *Idaho Postal Telegraph Cable Co.* v. *Ore. S. L. R. Co.*, 104 Fed. 623 (affirmed 111 Fed. 842, 49 C. C. A. 663), 90 Am. St. Rep. 705. "The fact that the condemnation of the land in question is also earnestly desired by a foreign corporation and will inure largely to its benefit, furnishes no reason for denying the relief asked for by the petition, provided it has brought itself within the language of the statute authorizing such proceeding." *In re Application of Staten Island Rapid Transit R. Co. etc.*, 103 N. Y. 251, 8 N. E. 548; *In re N. Y. L. & W. R. Co.*, 99 N. Y. 21, 1 N. E. 27.

The provision of the Constitution of the State of Nebraska with reference to the rights of foreign corporations exercising the right of domain, as quoted and construed in the case of *Koenig* v. *Chicago, etc., Ry. Co.*, 27 Neb. 699, 43 N. W. 423, and *State* v. *Scott*, 22 Neb. 628, declares that no foreign corporation can exercise the right of eminent domain or acquire a right-of-way or real estate for a depot or other uses, and in the case of *Koenig* v. *Chicago, etc., Ry. Co., supra,* the court, refer-

ring to a foreign railroad corporation, said: "If it cannot acquire, then it is forbidden to hold what it is prohibited from acquiring, because the effect of the denial of the right of acquisition is to prevent it from taking the property, and, as it cannot do indirectly what it is prohibited from doing directly, it cannot acquire and hold a leased line and thus evade a plain constitutional prohibition." There is no such prohibition in the Constitution of this State, and it is clear that, when a foreign corporation has complied with the laws of this State with reference to doing business therein, it is authorized to perform all acts and conduct its business in the manner authorized by its charter, except in the case of a plain constitutional restriction.

Section 11, article 12, of the Constitution of Arkansas is as follows:

"Foreign corporations may be authorized to do business in this State under such limitations and restrictions as may be prescribed by law * * *. They shall be subject to the same regulations, limitations and liabilities as like corporations of this State, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this State; nor shall they have power to condemn or appropriate private property."

It will be seen from this language that it is materially different from that of the Constitution of the State of Nebraska, and the only restriction on the powers of foreign corporations doing business in this State is contained in the last clause, to-wit, "nor shall they have power to condemn or appropriate private property." Since the power to acquire rights-of-way by purchase, lease, or otherwise, is not excepted from the general powers granted, it follows that a foreign corporation may exercise such power. The privilege granted a foreign corporation to do business in this State would be practically nullified if it were restricted from doing the act which was necessary to the prosecution of that business, and, as it is a necessary incident to the business of com-

panies engaged in the transmission of electricity for public use to acquire rights-of-way, this authority must be deemed to have been granted under its general powers, unless expressly or by necessary implication prohibited in terms expressed in the Constitution, and which it does not do.

We therefore conclude from the language of § 11, article 12, of the Constitution of Arkansas, *supra,* that the appellee, the legality of whose corporate existence is not questioned, under the terms of its charter had the power to condemn the right-of-way over the lands of appellant and to lease its rights so acquired to a foreign corporation, and we can see no reason for a denial of this right, although it might have been that it was created, among other things, for the purpose of acquiring that right for the benefit of a foreign corporation doing business in this State. If that corporation could acquire a right-of-way by purchase, it certainly could do the same by any other method, unless such method was prohibited, and the only method which may appear to be prohibited (but which we do not now decide) is that it might not acquire the right-of-way by the exercise of the power of eminent domain. The conclusion we have reached appears to us to be supported by the authorities hereinbefore cited. We therefore hold that a domestic corporation, the business of which, as expressed in its charter, is to generate and transmit electricity for public use, may lease the right-of-way secured by it to a foreign corporation engaged in a similar business, which has complied with the laws of this State and is doing business therein. And the act of such domestic corporation in securing such right-of-way by the exercise of its power of eminent domain cannot be questioned, except for fraud shown, although the principal motive for its incorporation was to secure the right-of-way for such foreign corporation, which had been unable to secure it for itself, even when the incorporators of the domestic corporation were employees of and the greater part of its capital stock immediately transferred to said foreign corporation. There

are, perhaps, some unusual circumstances connected with this case, but it nowhere appears that the appellant has been defrauded in any way. The Southwestern Gas & Electric Company merely resorted to a proper legal device to obtain the right-of-way which it thought necessary for the conduct of its business and which it had been unable to obtain by any other method from the appellant.

2. Was the purpose for which the right-of-way was sought to be condemned across the appellant's orchard one to serve a private use and not a public use? The learned chancellor, on this proposition, made a specific finding of fact in the decree rendered by him as follows: "The erection of the transmission line on the right-of-way in controversy will serve a public need and purpose either in the hands of the plaintiff in this suit or the Southwestern Gas & Electric Company." This is a question of fact which has been determined adversely to the contention of the appellant, and which must be sustained, unless it is shown that it is contrary to the clear preponderance of the testimony. It is conceded by the appellee that the right of eminent domain could not be exercised if it is shown that it is being fraudulently used to take private property for a private use instead of a public use. But it is contended by it, and we think properly, that nowhere in the testimony in this case is there any such showing of fraud intended or practiced. It may be true that the sole use to which the appellee seeks to put the property condemned is for the benefit of the Southwestern Gas & Electric Company, but, as that company is extensively engaged in the generation and transmission of electricity for public use, this, of itself, in our opinion, is sufficient to show that the use intended was a public use, and, while the principal immediate purpose was to serve the Standard Pipe Line Company and the American Cement Company, it is also apparent that the increasing needs of the public made necessary the erection of a high voltage power line, and that the line in controversy is used and operated as a part of the transmission line of the Southwestern Gas & Electric Company,

and is serving a large number of the citizens of this State. As before observed, this is a question of fact which has been found by the chancellor, and which we think is not against, but supported by, the preponderance of the testimony, and the cases cited by the appellant are not applicable to the facts disclosed in this record.

3. Was the right-of-way sought to be condemned necessary in order to enable the appellant, or its lessee, to perform their functions and duties to the public? This also is a question of fact upon which the chancellor has passed, and we find no evidence that would warrant us in holding that the decision of the chancellor was not correct. It is true the Southwestern Gas & Electric Company owned and operated a line near the point where the lands in question were taken, of the capacity of 33,000 volts, but the mere fact that it was going to a great expense in doubling the capacity of that line is persuasive that that company at least thought that the new construction was necessary. We can see no reason why, in enlarging and relocating its lines, the said Southwestern Gas & Electric Company or its subsidiary corporation, appellee here, should be compelled to follow the old transmission line with its meanderings and angles, when, from the nature of the increase made in the transmission capacity, it was apparent that the old right-of-way and equipment were insufficient. While the Legislature has said that a right-of-way must be necessary for the exercise of the rights of the corporation taking it, the question of whether or not there was a necessity must necessarily be left largely to the discretion of the corporation itself, and, unless it clearly appears that such discretion has been abused and its actions arbitrary and to the unnecessary damage of property owners, the exercise of that discretion will not be disturbed. In this case, while it might have been, and perhaps was, more convenient for the gas and electric company to make some changes in the route followed, this alone would not be a warrant for holding that its action in condemning the right-of-way in question was an unnecessary use of the power exer-

cised by appellee corporation for its benefit. It is our opinion that the decree of the chancellor in this particular was correct.

4. Was the chancery court correct in decreeing to appellee a fee simple title in and to the strip of land across the orchard of appellant? The appellant contends, and the appellee seems to admit, that the chancellor by his decree divested the fee simple title in and to the strip of land taken across the land of appellant from the appellant and vested it in the appellee. We have examined the decree, and are unable to discover that the chancellor has rendered any such decree. In the amendment to the complaint it is alleged by appellee that the only use it has for the right-of-way is that it might have the right of ingress and egress for the men and equipment used in the construction and maintenance of the transmission line, and that it would not be necessary to cut and remove any peach trees, and that the cultivation and use of said land by the appellant need not be interfered with in any manner except in so far as the presence of said poles on said land would interfere with same, and, after the construction of the line, appellee would not have occasion, except in some unforeseen emergency, during the life of the poles (which was estimated to be from fifteen to twenty years), to enter upon the land, other than to send one of its men on foot along the transmission line to inspect same about twice a month; but it alleged that it desired the exclusive use of all appellant's land if it had to pay the full value of same for damages for the right-of-way acquired.

In the decree the court merely held, in the declarations made preliminary to the decree proper, ''that the plaintiff should be granted the right to condemn the right-of-way as prayed for in the complaint, upon paying to the defendant damages in the sum of $1,000 on account of the taking of said right-of-way.'' Following that, the right-of-way is described, and then comes the decree proper, which is as follows: ''It is therefore by the court considered, ordered and decreed that the plaintiff be and

it is hereby granted the right-of-way as hereinbefore described across the lands of defendant, for the purpose of constructing, maintaining and operating said transmission line, conditioned, however, upon the payment to the defendant by the plaintiff, within thirty days from this date, (of) the sum of $1,000, covering all damage sustained by the defendant on account of the taking of said right-of-way by the plaintiff.'' By this decree an easement only is created, and the appellee is necessarily granted the exclusive possession of the property to the extent that such possession is necessary for the erection, operation and maintenance of its line, and to no other or greater extent. By admissions of the appellee in its amended answer, it is shown that the exclusive possession granted was only necessary for the time during the actual erection of the line, or in the case of some unforeseen emergency, and that the extent of the possession absolutely necessary would be only for the purpose of occasional trips of inspection by its employees. In no case can the fee simple title in its true sense be vested in the corporation exercising the right of eminent domain, for, at whatever time the purpose for which the right-of-way was taken had been accomplished and its use terminated, the possession and all other incidents of ownership would revert to the original owner. It is true, the necessary uses for a parcel of land condemned may be of such nature as to preclude any possession except that of the party exercising the right to condemn, and to that extent an estate in the nature of a fee would be acquired; as, for instance, a railroad corporation might condemn a plot of ground for a depot. The purpose for which this land would be used would be such that the owner could not exercise any possession over it that would be consistent, and not interfere, with the rights of the railroad company, so that it would necessarily have the exclusive possession for all purposes. But in all other cases, except such as of the same nature of the possession stated just above, the owner would have also the

right to the possession, subordinate to the paramount possession of the condemnor, and might exercise any and all rights of ownership, except such as were inconsistent, and an interference, with the easement granted.

In the instant case the appellee has the exclusive possession of the strip of land taken for all purposes necessary to carry into effect and maintain the transmission line, and to no other extent. Therefore the appellant still and does have the right to enter upon the same at all reasonable times and for all reasonable purposes not inconsistent, or in interference, with the rights of the appellee. Appellant may continue to grow his peach trees, cultivate them, and gather the fruit, so long as it does not interfere with the property of the appellee or its employees in the performance of their legitimate duties.

The appellee contends that it should not be charged with the full value of the land actually taken, but it has cited a sufficient answer to that contention, namely, "the company's remedy in such cases is to condemn no more than it needs." *Ry. v. Combs,* 51 Ark. 324-328, 11 S. W. 418. This court has recognized in a number of cases that, in the acquirement of a right-of-way, nothing is obtained save an easement, and we see no reason to now hold otherwise. See *Ry. v. Combs, supra; Baucum v. Ark. Power & Light Co., ante,* p. 154.

5. Was the damage awarded the appellant adequate? The appellant insists that the entry made upon land and the erection of the transmission line across it was unlawful, and that the improvement inured to its benefit, and therefore, in awarding the damages, the court should have ascertained the value of the whole line as constructed on appellant's land, and awarded that amount in addition to the other damages given. We think the position of the appellant is untenable. While the line may have been erected without sufficient authority at that time (which we do not here decide), still, in our opinion, this is a matter, if appellant is entitled to

damage on that score, in which its rights may be fully protected in a proper proceeding, and it is not entitled in this case to the damages claimed.

The appellee, on its cross-appeal, also complains of the award of damages made by the court, on the theory that the same were excessive, and not warranted by the testimony. There were about three acres of land actually taken in the right-of-way, and, without discussing in detail the testimony as to its value and the consequential damage to the orchard of appellant as a whole, we think it is sufficient to sustain the finding of the chancellor; and, as the appellee is entitled to the full value of the three acres taken and such damage to the remainder of the orchard as might be sustained by reason of the erection of the transmission line across same, we think, under all the circumstances in the case, that the finding of the chancellor is not unreasonable or against the clear preponderance of the testimony.

6. On its cross-appeal the appellee asks us to decide the question as to the right of the Southwestern Gas & Electric Company to condemn the right-of-way in controversy. Inasmuch as the Southwestern Gas & Electric Company is no longer a party to this suit, we think that question is not properly presented, and, as its decision is not necessary for the decision of this case, we expressly refrain from passing upon that question.

There remains but one matter of which the appellant complains, namely, that the chancellor abused his discretion in adjudging the costs against it. It is our opinion that § 3999 of Crawford & Moses' Digest does not limit the discretion of the chancellor, for in that section the deposit is "to pay the owners the amount assessed and such costs as may, in the discretion of the court, be adjudged against it." We think the statute leaves the discretion just where it found it, and we cannot say that any abuse of that discretion has been made in this case. Doubtless the chancellor had complete knowledged of all the circumstances surrounding the

facts in the case, and perhaps thought the appellant had been given a liberal amount of damages, and that it would be fair to compel it to pay the costs.

As we view this case and the decree rendered in the court below, we are of the opinion that the decree is in conformity with the conclusions we have reached, and it is therefore in all things affirmed.