DEPARTMENT OF PUBLIC UTILITIES *v.* McCONNELL.

4-5566                                                   130 S. W. 2d 9

Opinion delivered June 5, 1939.

*Thomas Fitzhugh, J. T. Hornor, Jr., John Sherrill* and *Howard Cockrill,* for appellant.

*Chas. B. Thweatt,* for appellee.

*Chas. D. Frierson* and *Chas. Frierson, Jr., amici curiae.*

GRIFFIN SMITH, C. J. The question is, May the Department of Public Utilities be required to condition a certificate of convenience and necessity in such manner as to compel rural electric co-operative corporations to indemnify telephone companies, or the owners of telephone lines and equipment, to the extent that the use of such telephone facilities has or will be impaired by reason of inductive interference?

Act 342, approved March 25, 1937 (Pope's Digest, §§ 2315-2351), authorizes the creation of co-operative, non-profit-sharing membership corporations ". . . for the purpose of engaging in rural electrification." (Pope's Digest, § 2317 *et seq.*) A requirement is that such corporations shall secure from the Department of Public Utilities (hereinafter referred to as the Department) a certificate of convenience and necessity ". . . for the construction or operation of any equipment or facilities supplying electric service in rural areas."

The act further provides (§ 31) that all corporations chartered under the authority conferred ". . . shall be exempt in any and all respects from jurisdiction and control of the Department of Public Utilities of this State."

Two orders of the Department are involved in this controversy. They are identified as Docket No. 272, and Docket No. 275.

In March, 1938, the Department held a general hearing to determine whether certificates of convenience and necessity issued to rural electric co-operative corporations should be conditioned upon the applicant's obligation, as an incident of the certificate, to compensate damages. Notice of the hearing was sent to all electric companies, rural electric co-operatives, and all telephone companies, within the state. The Arkansas Telephone Association appeared and represented approximately 190

independent rural telephone organizations. The Southwestern Bell Telephone Company was notified, but did not appear. The Department's ruling was that the certificates should be unconditional. (Docket No. 272).

Another hearing was held when the Carroll County Electric Co-operative Corporation made application for a certificate of convenience and necessity. A rural telephone company appeared for the purpose of resisting issuance of an unconditional certificate, and for the purpose of presenting particular facts relating to alleged inductive interference.

Order of the Department (Docket No. 275) was adverse to the telephone company, the same rule being applied as that promulgated in Docket No. 272.

On appeal to Pulaski Circuit Court the causes were consolidated. The court held that the general order of the Department on the subject of inductive interference was illegal ". . . in that it prescribed a general rule under which certificates of convenience and necessity granted to power companies [would] not be conditioned in any manner so as to require the power companies to make compensation to the telephone companies for damages to telephone service due to inductive interference caused by the operation of electric power lines, [and] the Department's order should have provided for such compensation as a condition precedent to the granting of the certificates."

The judgment directed that the Department's order be set aside, and that ". . . the entire matter be . . . remanded to the Department for further procedure not inconsistent with the judgment, and with directions that all certificates to construct or operate electric power lines shall be conditioned so as to require that just compensation be made to owners or operators of grounded telephone lines already built or in operation, for all damages to service due to inductive interference caused by the operation of the power lines, and that the certificate granted to the Carroll County Electric Co-operative Corporation be conditioned so as to require the payment of such compensation to R. O. McConnell."

In its orders the Department found that there are two types of rural telephone construction in general use throughout the state; one a metallic circuit, the other a grounded line. The so-called metallic system has two wires to complete the circuit. The wires are transposed or crossed at intervals, the result being that magnetic energy caused by electricity from parallel or contiguous transmission lines is eliminated. The second type of telephone construction utilizes the earth to complete the circuit, and is peculiarly sensitive to interference occasioned by highly charged electric wires.

As far back as 1885 telephone companies were granted the right to use public highways of the state and streets of cities and towns for the construction of their lines. In 1907 the same right was granted electric companies.

Section 2111 (b) of Pope's Digest is: "Every public utility which owns, operates, manages or controls along or across any public or private way any wires over which electricity or messages are transmitted shall construct, operate and maintain such wires and the equipment used in connection therewith in a reasonably adequate and safe manner, and so as not to unreasonably interfere with the service furnished by other public utilities."

This section, appellees insist, is authority for their demand that rural electric co-operative corporations construct their lines in such manner as not to unreasonably interfere with telephone service. It is admitted that the manner of construction proposed by the co-operatives will occasion inductive interference, but it is urged that the system of grounded circuit telephones is outmoded; that it is obsolete in all respects, and that modern methods for supplying domestic and commercial electricity to rural sections are not to be dispensed with nor construction burdened because of the antiquated system and equipment of the telephone companies. On the other hand, the latter say that cost of metallicizing rural telephone circuits in the more sparsely settled areas would be disproportionate to the available revenue, and therefore prohibitive to patrons.

The record contains testimony in respect of two types of powerline construction. The method used at present in rural electrification is the "Y" type. Another system is known as the "Delta" plan. The former is said to occasion greater inductive interference than the Delta system, but the latter is more dangerous and more expensive.

In the view we take of the controversy it is not necessary to decide any of the questions raised other than the right of the Department to issue unconditional certificates of convenience and necessity.

The admission having been made that rural electrification will interfere with grounded systems of telephone communication, insistence is that such interference is not unreasonable. This, also, we do not decide.

What we do decide is that the Department, by express language of the statute, is denied jurisdiction over the co-operatives in questions other than a determination of whether public convenience and necessity will be served in the particular territory or area into which, or throughout which, the applicant proposes to operate.

While it is true that under § 43 of Act 324 of 1935 the Department of Public Utilities is empowered ". . . to attach to the exercise of the rights granted by [a certificate of convenience and necessity] such terms and conditions, in harmony with [the] act, as in its judgment the public convenience and necessity may require," we are of the opinion that such power of limitation relates to methods of construction and the quality and extent of service in relation to rates, etc., rather than to controversies between contending utility companies in respect of matters involving damages to their properties. Determination of the former is legislative in its nature, while the latter is judicial. The Department, in effectuating the legislative intent through promulgation of rules and regulations within the scope of the authority conferred, acts as a law-making body. In enforcing such rules and regulations, the Department acts in an administrative capacity.

In one instance, and in one only, may the Department assess damages. If, after determining that a rate is un-

reasonable, discriminatory, or that it in other respects violates the law, and in consequence of such determination a just rate is announced, the Department may, in connection therewith, fix the amount to be refunded to consumers, and it may enforce its order by bringing suit.

The judgment is reversed, and the consolidated causes are remanded with directions to enter an order approving the Department's actions in issuing unconditional certificates of convenience and necessity.