GRAY *v.* OUACHITA CREEK WATERSHED DISTRICT.

5-2504                                       351 S. W. 2d 142

Opinion delivered November 20, 1961.

*George F. Hartje, Jr.,* for appellant.

*Mehaffy, Smith & Williams,* by *R. Ben Allen,* for appellee.

ED. F. McFADDIN, Associate Justice. The question presented is whether there has been an arbitrary and excessive taking of lands in an eminent domain proceeding.

In September, 1960, the appellee, Ouachita Creek Watershed District (hereinafter called "District") filed its complaint in the Perry Circuit Court seeking to acquire by eminent domain certain lands for the construction site of dams, etc. in its watershed construction project. The complaint alleged in part:

"That the said District was organized on the 5th day of November, 1958 by an order of the Chancery Court of Perry County, Arkansas, under authority of the Arkansas Irrigation, Drainage and Watershed Improvement Act No. 329 of the Acts of Arkansas of 1949, as amended (Section 21-901 to 21-924 of the Statutes of Arkansas). That said District was organized for the purpose of preventing flood water, sediment damage and soil erosion to the lands embraced within the said District, and in cooperation with the Federal Government under the Watershed Protection and Flood Project Act (Public Law 566 of the 83rd Congress). That this action is a Civil Action wherein the District seems to exercise the power of eminent domain and for ascertainment and award of just compensation to the owners and parties at interest in the lands sought to be condemned. That this action is brought as authorized by Section 29-912 of the Statutes of Arkansas and under the provisions of Section 35-1101 to Section 35-1113 of the Statutes of Arkansas. THAT the use for which the property is to be taken is for the construction and operation of dams, rights-of-way, drainage ditches and other works of improvement in connection with the said Watershed District, and for the use and benefit of the land owners within said District and for the public in general in the prevention of floods and soil erosion and other purposes; and that the lands sought to be condemned are necessary for the use thereof and for the completion of the proposed works of improvement in cooperation with the Federal Government."

The appellant McKinley Gray, for himself and other landowners, filed answer and cross-complaint. He admitted the organization of the District but claimed that the taking of some of the lands was arbitrary and excessive. The Perry Circuit Court temporarily suspended all the proceedings in the condemnation case; and transferred to the Chancery Court, for determination, the issue as to whether there was an arbitrary and excessive taking of lands by the District. The Chancery Court heard the issue transferred to it and entered its decree, the germane portion of which recites:

"Both the plaintiff district and the defendants have introduced testimony of a technical nature concerning the necessity of the said district to construct the works of improvement on the lands involved, and the court finds from said testimony that the lands involved are necessary for the plans of improvement for the district; the court further finds that the said district has the authority to exercise the power of eminent domain and to condemn lands found to be necessary for the improvements to be constructed for the benefit of the district . . ."

From the Chancery Decree there is this appeal, and the appellants list as the only point presented:

"The Court's holding, that the lands sought to be condemned herein were necessary for the fulfillment of the purposes of the watershed district, was erroneous as against the preponderance of the evidence."

When the appellant alleged that the taking was arbitrary and excessive, there was thus presented an issue which was cognizable in chancery. *Burton* v. *Ward,* 218 Ark. 253, 236 S. W. 2d 65. But the making of such an allegation is much easier than the offering of sufficient evidence to sustain it. The State, by conferring on the District the power of eminent domain,[1] necessarily left largely to the discretion of the District the location and area of the land to be taken. And one seeking to show that the taking has been arbitrary or excessive shoulders a heavy burden of proof in the attempt to persuade the

[1] See § 21-912 Ark. Stats.

Court to overrule the District's judgment. *Burford* v. *Upton*, 232 Ark. 456, 338 S. W. 2d 929; *Woolard* v. *State Hwy. Comm.*, 220 Ark. 731, 249 S. W. 2d 564; *State Game & Fish Comm.* v. *Hornaday*, 219 Ark. 184, 242 S. W. 2d 342; *State Hwy. Comm.* v. *Saline County*, 205 Ark. 860, 171 S. W. 2d 60; and *Patterson Orchard Co.* v. *S. W. Ark. Util. Corp.*, 179 Ark. 1029, 18 S. W. 2d 1028.

In *State Highway Comm.* v. *Saline County, supra,* the State Highway Commission was condemning a right-of-way through certain lands, and we said of the Highway Commission:

"Since it had this power it also had discretion to determine the route and the location of the right-of-way. 'A broad discretion is necessarily vested in those to whom the power of eminent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line, or location of the proposed work or improvement; and the general rule is that the courts will not disturb their action in the absence of fraud, bad faith, or gross abuse of discretion. The landowner may not object merely because some other location might have been made or some other property obtained which would have been suitable for the purpose.' 18 Am. Jur. 735. In 29 Corpus Juris Secundum (Eminent Domain § 91), page 886, it is said: 'Under a delegation of the power of eminent domain the grantee of the power, in the absence of legislative restriction, may determine the location and route of the improvement and of the land to be taken for it, and such determination will not be interfered with by the courts if it is made in good faith and is not capricious or wantonly injurious, or in some respects beyond the privilege conferred by the charter or statute.' Justice Butler, speaking for the court in the case of *Patterson Orchard Co.* v. *Southwest Arkansas Utilities Corporation*, 179 Ark. 1029, 18 S. W. 2d 1028, 65 A. L. R. 1446, said: 'While the Legislature has said that a right of way must be necessary for the exercise of the rights of the corporation taking it, the question of whether or not there was a necessity must necessarily be left largely to the discretion of the corpo-

ration itself, and, unless it clearly appears that such discretion has been abused and its action arbitrary and to the unnecessary damage of property owners, the exercise of that discretion will not be disturbed.' ''

Did the appellants discharge the heavy burden imposed upon them in this case? That is, did they show that the taking was arbitrary and excessive? They offered the testimony of a capable engineer who testified that in his opinion the dams ''2'' and ''3'', to be located on the lands of appellants in the northernmost end of the District, were unnecessary, and that the same result could be obtained by deepening the main ditch one foot. To overcome this testimony, the appellee District introduced the Hydraulic Engineer of the Soil Conservation Service of the United States Department of Agriculture and also the Assistant State Conservationist of the Soil Conservation Service. These witnesses for the defendant testified that the work plan of the district was correct. There was introduced in evidence this plan for watershed protection, flood prevention, and agricultural water management of the Ouachita Creek Watershed; and it is a most enlightening prospectus. Five technicians spent months going over the ground and preparing the booklet for this Ouachita Creek Watershed, and the result of their efforts and labors is the plan that was introduced. They used mathematical formulas as to the number of acres, the rainfall, the drainage problems, etc., etc., and concluded that these dams ''2'' and ''3'', on the lands here involved, were required for the safe operation of the watershed project. The engineer for the appellants was just as capable as the engineers for the District; end it is just a difference of opinion between the engineers as to whether the deepening of the main ditch is better than the location of the two uppermost dams. The situation was very well summed up in the question to and answer made by the engineer for the appellants:

''Q. And then you have taken this data that has been worked up by the Soil Conservation Service and

put in this form and you — it is just a difference of opinion, is that right?

A. A difference of opinion as to the requirements: the Soil Conservation Service seems to think that Dams No. 2 and 3 are required; in my opinion they are not.''

With the evidence thus in equipoise, the Chancery Court held that the objecting landowners had failed to establish by the required *quantum* of proof that there was an arbitrary and excessive taking. On appeal, we cannot say that the decision of the Chancellor was against the preponderance of the evidence. When honest and capable men may differ as to whether to build a dam or deepen a channel, it is a matter in the engineering field; and, on this evidence, there is certainly no showing that the taking was excessive or arbitrary. With the District acting on the advice of its engineers and advisers, certainly the District did not abuse its discretion in following the work plan developed over many months by competent persons.

The decree is affirmed.