Perry HARNESS, et al. *v.* ARKANSAS PUBLIC SERVICE COMMISSION and Carroll Electric Cooperative Corporation

CA 96-1218 962 S.W.2d 374

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered February 11, 1998

*Shults, Ray & Kurrus*, by: *H. Baker Kurrus* and *Deborah Truby Riordan*, for appellants.

*Valerie F. Boyce*, for appellee Arkansas Public Service Commission.

*Everett & Mars*, by: *William B. Putman*, for appellee Carroll Electric Cooperative Corporation.

OLLY NEAL, Judge. Carroll Electric Cooperative Corporation (Carroll) filed an application with the Arkansas Public Service Commission (Commission) for a certificate of public convenience and necessity (certificate) to construct, operate, and maintain an electric transmission line and facilities in Arkansas. The Commission found that Carroll's proposed transmission line and facilities were needed to assure an adequate and more reliable supply of electric energy and that Carroll's proposed route for its transmission line was reasonable and appropriate and granted Carroll's application. Appellants, property owners in Boone and Newton Counties, opposed Carroll's proposed location for the transmission line, although they did not controvert the need for improved transmission facilities. On appeal, they contend that the Commission failed to pursue its regular authority as required by Ark. Code Ann. § 23-2-423 (Supp. 1995), in finding that appellants were provided adequate notice of the Commission proceedings and that the Commission acted arbitrarily and capriciously in approving the route proposed by Carroll for its transmission line and facilities.

This court's review of the Commission's orders is limited and governed by Ark. Code Ann. § 23-2-423(c), which provides that the finding of the Commission as to facts, if supported by substantial evidence, shall be conclusive and that the court's review shall not be extended further than to determine whether the Commission's findings are supported by substantial evidence and whether the Commission has regularly pursued its authority, including a determination of whether the order or decision under review violated any rights under the laws or Constitution of the United States or of the State of Arkansas. *See Bryant v. Arkansas Pub. Serv. Comm'n*, 57 Ark. App. 73, 941 S.W.2d 452 (1997). To set aside the Commission's action as arbitrary and

capricious, the appellant must prove that the action was a willful and unreasoning action, made without consideration and with a disregard of the facts or circumstances of the case. *AT&T Communications of the S.W., Inc. v. Arkansas Pub. Serv. Comm'n*, 40 Ark. App. 126, 843 S.W.2d 855 (1992). In order to establish an absence of substantial evidence, the aggrieved party must show that the proof before the Commission was so nearly undisputed that fair-minded persons could not reach the same conclusion. *Id.* If an order of the Commission is supported by substantial evidence and it is neither unjust, arbitrary, unreasonable, unlawful, nor discriminatory, then this court must affirm. *Id.*

On October 11, 1995, Carroll filed an application with the Commission, requesting a certificate of public convenience and necessity pursuant to Ark. Code Ann. § 23-3-201 (1987), to construct, operate, and maintain a 69-kilovolt high-capacity transmission line from a substation to be constructed in the southwest portion of Harrison, Arkansas, to its existing substation in Dogpatch, Arkansas, and into Jasper, Arkansas. A hearing on Carroll's application was scheduled for February 20, 1996. On or about January 18, 1996, Carroll sent notice of the filing of its application to the affected landowners. Appellants, some of the affected landowners, filed a petition to intervene on February 12, 1996, and moved for a continuance of the hearing. The administrative law judge (ALJ) granted appellants' intervention petition but denied their motion for a continuance.

Order No. 4, entered by the ALJ following the conclusion of the February 20th hearing, granted Carroll's request for the certificate. The ALJ found that Carroll's proposed transmission line and facilities were needed to assure an adequate and more reliable supply of electric energy and that Carroll's proposed route for the transmission line was just and reasonable. The ALJ also found that the testimony and other evidence at the February 20, 1996, hearing indicated that Carroll Electric complied with the property owner notification requirements of the Commission Rules of Practice and Procedure. In Order No. 5, the Commission affirmed Order No. 4 without modification, and in No. Order 6, the Commission denied appellants' petition for rehearing and

injunction without comment. On October 10, 1996, appellants filed their notice of appeal of Orders No. 4, 5, and 6.

■ The first issue appellants raise concerns the timeliness of the notice that Carroll gave them of the filing of its original application for a certificate of public convenience and necessity. Carroll filed its application, seeking approval of its proposed transmission line and facilities, on October 11, 1995. Carroll then waited until January 18, 1996, approximately thirty days before the scheduled February 20th hearing date, to notify the affected landowners of its application. Appellants argue that they were denied due process because they were not afforded sufficient time to prepare for the hearing. A fundamental requirement of due process in matters of public utility regulation is a full and fair hearing, including the right to submit evidence and testimony, to examine witnesses, and an opportunity to present evidence or testimony in rebuttal to adverse positions. *Arkansas Elec. Energy Consumers v. Arkansas Pub. Serv. Comm'n*, 35 Ark. App. 47, 813 S.W.2d 263 (1991).

■ Arkansas Code Annotated § 23-3-201(a) requires a utility to obtain a certificate of public convenience and necessity before any new construction or operation of any equipment or facilities for supplying a public service, or extension thereof, is undertaken. The Commission, in issuing or denying certificates of public convenience, acts legislatively and effectuates the legislative intent through the promulgation of rules and regulations. *See Department of Pub. Util. v. McConnell*, 198 Ark. 502, 130 S.W.2d 9 (1939). In enforcing such rules and regulations, the Commission acts in an administrative capacity. *Id.* Rule 7.04 of the Commission Rules of Practice and Procedure addresses certificates for electric utilities. Rule 3.03(a) and (b) provide for the notice that must be given when applying for a certificate:

> (a) The Commission shall fix the time and place of all hearings and notice of the place, day and hour of a hearing shall be served on all parties to the proceeding at least thirty (30) calendar days before the time set therefor, unless the Commission shall find that public necessity requires the hearing to be held at an earlier date. (See also Rule 1.04(b).)

(b) Notice of the filing of a formal application by a public utility shall be given by a public utility in the following manner, unless otherwise provided by the Commission.

. . . .

(2) Application for Certificates of Public Convenience and Necessity.

The applicant for a Certificate of Public Convenience and Necessity shall notify each owner of record (or the person or firm to whom property tax statements have been mailed in the most recent year) of lands which the applicant proposes in its application to traverse. Such notice shall be given by first-class mail, properly addressed with charges prepaid and shall include the following information:

(A) The date the application was filed, the docket number assigned thereto; and, if known, the place, day, and hour of the hearing on such application; if hearing date is unknown at the time of filing for a Certificate of Public Convenience and Necessity, the name and address of the Commission's Secretary where such information may be obtained in the future;

(B) A brief description of the facilities to be constructed and a description of the owner's lands to be traversed.

It is undisputed that the first notice of Carroll's application appellants received was the January 18th notice sent by Carroll that advised them of the time and place of the hearing set on its application. The Commission and Carroll argue that Rule 3.03(b)(2) does not specify when the notice must be given and therefore the January 18th notice that Carroll sent to appellants complied with the Commission rules. Appellants contend that Carroll's failure to give them the notice required by Rule 3.03(b)(2) at the time its application was filed deprived them of adequate due process and that the Commission erred in holding that Carroll complied with the property owner notification requirements of the Commission Rules of Practice and Procedure.

■ ■ An agency's interpretation of its own rules is not binding on the courts if the interpretation is plainly erroneous or

inconsistent. *See General Tel. Co. of the Southwest v. Arkansas Pub. Serv. Comm'n*, 23 Ark. App. 73, 744 S.W.2d 392 (1988). *See also Boone County v. Apex of Ark.*, 288 Ark. 152, 702 S.W.2d 795 (1986). Here, the Commission attempts to persuade this court that Rule 3.03(b)(2) allows the petitioner to wait to send notice until after the hearing date is set as long as the notice is given within a "reasonable time." We find this construction inconsistent with Rule 3.03(a) and the intent of the notice requirements. Although the wording of Rule 3.03(b)(2)(A) is somewhat unclear, the most reasonable construction is that this rule requires the petitioner to give notice when the petition is filed and, if a hearing date is not set at that time, the petitioner must include in the notice "the name and address of the Commission's Secretary where such information may be obtained in the future. . . ." Rule 3.03(a) specifically requires the Commission to give the parties notice of the hearing. To have become parties, the affected landowners would have to have received notice of the filing of the application. It is nonsensical to interpret the rule to allow the petitioner to wait to give notice until after the hearing is set, especially under the facts of this case where the hearing was not set until more than three months after the application was filed. Even if we agreed that Rule 3.03(b)(2) allows notice within a reasonable time, Carroll waited an additional nine days after the hearing was scheduled before it notified the landowners. We cannot agree that waiting almost 100 days to give notice when the hearing is set for thirty days later is a "reasonable time."

■ ■ Nevertheless, we are precluded from reversing on this issue because of the doctrine of invited error. This doctrine provides that an appellant may not complain of an alleged erroneous action of the trial court if he has consented to or acquiesced in that action. *See Briscoe v. Shoppers News, Inc.*, 10 Ark. App. 395, 664 S.W.2d 886 (1984). *See also Peek v. Arkansas Dept. of Human Servs.*, 304 Ark. 172, 800 S.W.2d 428 (1990). In Order No. 3, which denied appellants' motion for continuance, the ALJ stated:

> If, at the conclusion of the hearing, the record has not been fully and adequately developed for the [appellants'] purposes, and this appears to be a result of a lack of timely notice afforded to one or more of the [appellants], then those [appellants] may renew

their motion for a continuance, and the advisability and necessity of a second hearing for the purpose of receiving additional evidence will be considered.

Appellants did not renew their motion for continuance at the February 20 hearing. Instead, they made a proposal to the ALJ at the conclusion of the hearing, requesting that they be allowed ten days to decide whether they wanted to submit testimony of an expert witness and, if so, to depose the witness within twenty days thereafter. The ALJ granted appellants' proposal over the objection of Carroll. The ALJ also stated that he would treat the record as closed if appellants chose not to submit expert testimony at the end of the ten-day period. No objection was made by appellants at that time. Although the ALJ was later notified by appellants' attorney that appellants would not present expert testimony and to note appellants' objections to his denial of the continuance for the record, his objections were not made until after appellants' proposal was granted. Appellants may not now complain that they were denied a continuance when they did not renew their motion at the hearing but instead requested that their proposal be granted. *See Security Pac. Hous. Servs. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993).

The remainder of appellants' arguments on appeal concern their contention that the Commission acted arbitrarily and capriciously in granting Carroll a certificate to locate a transmission line and facilities along its proposed route. Specifically, appellants contend that, because the Commission was not presented with any cost studies substantiating the reasonableness of the proposed right-of-way; no meaningful analysis of alternative right-of-ways was performed; environmental considerations were not taken into account; and a meaningful analysis of the use of the existing right-of-way was not considered, it had insufficient evidence before it to determine whether Carroll's proposed right-of-way was appropriate and reasonable. Appellants point out that statutes which relate to the power of eminent domain should be strictly construed in favor of the landowner, *see Columbia County Rural Dev. Auth. v. Hudgens*, 283 Ark. 415, 678 S.W.2d 324 (1984); *Loyd v. Southwest Ark. Util. Corp.*, 264 Ark. 818, 580 S.W.2d 935 (1979), and no more property of a private individual,

and no greater interest therein, can be condemned and set apart for public use than is absolutely necessary. *See Selle v. City of Fayetteville,* 207 Ark. 966, 184 S.W.2d 58 (1944).

██ ██ Arkansas Code Annotated § 18-15-503(a)(1) (1987) provides:

> Any corporation organized under the laws of this state for the purpose of generating, transmitting, and supplying electricity for public use may construct, operate, and maintain such lines of wire, cables, poles, etc., necessary for the transmission of electricity along and over the public highways, and the streets of the cities and towns of this state or across or under the waters, and over any lands or public works belonging to the state, and on and over the lands of private individuals. . . .

Broad discretion is vested in those to whom the power of eminent domain is delegated. *State Highway Comm'n v. Saline County,* 205 Ark. 860, 171 S.W.2d 60 (1943). The question of whether the condemnation of a right-of-way for a transmission line is necessary must be left largely to the discretion of the condemnor, and the exercise of that discretion will not be disturbed unless it clearly appears that the discretion has been abused and the action is arbitrary and causing unnecessary damage to the property owners. *Patterson Orchard Co. v. Southwest Ark. Util. Corp.,* 179 Ark. 1029, 18 S.W.2d 1028 (1929). In *Gray v. Ouachita Creek Watershed Dist.,* 234 Ark. 181, 351 S.W.2d 142 (1961), the supreme court explained:

> The State, by conferring on the District the power of eminent domain, necessarily left largely to the discretion of the District the location and area of the land to be taken. And one seeking to show that the taking has been arbitrary or excessive shoulders a heavy burden of proof in the attempt to persuade the Court to overrule the District's judgment. *Burford v. Upton,* 232 Ark. 456, 338 S.W.2d 929; *Woolard v. State Hwy. Comm.,* 220 Ark. 731, 249 S.W.2d 564; *State Game & Fish Comm. v. Hornaday,* 219 Ark. 184, 242 S.W.2d 342; *State Hwy. Comm. v. Saline County,* 205 Ark. 860, 171 S.W.2d 60; and *Patterson Orchard Co. v. S.W. Ark. Util. Corp.,* 179 Ark. 1029, 18 S.W.2d 1028.
>
> In *State Highway Comm. v. Saline County, supra,* the State Highway Commission was condemning a right-of-way through certain lands, and we said of the Highway Commission:

Since it had this power it also had discretion to determine the route and the location of the right-of-way. "A broad discretion is necessarily vested in those to whom the power of eminent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line, or location of the proposed work or improvement; and the general rule is that the courts will not disturb their action in the absence of fraud, bad faith, or gross abuse of discretion. The landowner may not object merely because some other location might have been made or some other property obtained which would have been suitable for the purpose." 18 Am.Jur. 735. In 29 Corpus Juris Secundum (Eminent Domain § 91), page 886, it is said: "Under a delegation of the power of eminent domain the grantee of the power, in the absence of legislative restriction, may determine the location and route of the improvement and of the land to be taken for it, and such determination will not be interfered with by the courts if it is made in good faith and is not capricious or wantonly injurious, or in some respects beyond the privilege conferred by the charter or statute." Justice Butler, speaking for the court in the case of *Patterson Orchard Co. v. Southwest Arkansas Utilities Corporation*, 179 Ark. 1029, 18 S.W.2d 1028, 65 A.L.R. 1446, said: "While the Legislature has said that a right of way must be necessary for the exercise of the rights of the corporation taking it, the question of whether or not there was a necessity must necessarily be left largely to the discretion of the corporation itself, and, unless it clearly appears that such discretion has been abused and its action arbitrary and to the unnecessary damage of property owners, the exercise of that discretion will not be disturbed."

*Gray v. Ouachita Creek Watershed Dist.*, 234 Ark. at 183-85, 351 S.W.2d at 144.

 Although Arkansas courts have not had occasion to discuss the appropriate scope of inquiry that the Commission should consider in granting a certificate of public convenience for the construction of an electrical transmission line and facilities, the issue has been addressed by the Commission. In *In re Arkansas Power and Light Co.*, 118 P.U.R. 4th 156 (1990), the Commission held that the basic test or guiding principle that should govern the selection of a route in a transmission-line case is whether the route proposed will best serve the public interest and result in the least

amount of private harm. The Commission explained that, if the route proposed by the utility is not unreasonable and appears to have been selected after consideration of certain factors, the governmental regulatory agency should confine itself only to ordering minor deviations in the route. The Commission then listed the following factors that should be considered in determining whether a proposed route is reasonable: cost of the facility, health and safety, engineering and technical concerns, ecological/environmental disruptions, disruption to or interference with existing manmade property uses, disruption to or interference with planned manmade property uses, and aesthetic displeasure. These same factors were restated by the Commission in *In re Southwestern Electric Power Co.*, Docket No. 94-003-U, 155 P.U.R.4th 316 (1994):

> It is not the function of a public utility regulatory agency to substitute or superimpose its judgment for that of a utility as to the location of proposed new transmission facilities. If the route selected by the utility is not unreasonable and appears to have been chosen after consideration of the seven factors previously enumerated, and any other factors which may be relevant in that specific case, then in the absence of special or very unusual circumstances the governmental regulatory body reviewing the application for a certificate of public convenience and necessity should confine itself to only ordering minor deviations in the route.

*Id.*

In support of its application, Carroll introduced the testimony of Emmett Green, the engineer principally in charge of designing Carroll's proposed route and facilities. Green explained that Carroll's present power source is served by a 33-kilovolt substation in Bellefonte, Arkansas, which was built by Arkansas Power & Light (AP&L) many years ago. He stated that, as the loads have grown in the Harrison area, AP&L has discontinued the use of 33 kilovolt, changing to 161 kilovolt and others, and stated that Carroll's load in Jasper and Dogpatch areas has grown to the point where the transformer that AP&L was permitting them to use is fully loaded. He also stated that Carroll's present line that runs to Jasper was built in the 1940s and has become overloaded; the facil-

ities have deteriorated; and the line is inadequate for the loads that have developed in Jasper. Green testified that Carroll must obtain another power source with more capacity to serve the Newton County area; that it began looking in the Harrison area for a place to install a new 161- to 69-kilovolt substation; and that AP&L had a location that permitted Carroll to have a short line from Jasper to Harrison. Green testified that, because the government would not negotiate an alternative route, Carroll would continue to use its existing easement through the Buffalo National Forest and Park as part of its proposed route and overbuild its lines through the area. This easement will consist of a sixty-foot right-of-way through the national park and river and an eighty-nine to ninety-foot right-of-way through the forest. He explained that a 100-foot right-of-way was being proposed for the remainder of the line, because it provides a little more margin for safety and takes into account the height of the trees that might be on the outside of the clearance and whether they would strike a conductor if they fell.

Evidence was also presented that Carroll did consider other alternate routes for its proposed line. Green testified that three of the alternate routes Carroll considered were not acceptable because they would have required a new right-of-way through the Buffalo National Park and Forest, which the government was unwilling to negotiate. In explaining Carroll's decision not to build along its existing route, Green testified that Carroll would have to build a 161- to 69-kilovolt substation near its metering point to be able to overbuild its existing line; that there would be difficulty in finding a location in that area because the area is congested around Harrison and along Highway 62; that it is a hazardous and very slow process to overbuild or build next to an existing line that is operating at 33,000 volts; and that it is more expensive to keep an existing line in operation and work around it. Carroll estimated its costs for the project to be $2,510,000. Green testified that the cost to overbuild or build along an energized line would be higher and that the labor cost alone will be at least 50% more to overbuild. He also explained that the number of corners in the existing line are very expensive additions to lines, ranging

from $10,000 to 25,000 each, and would significantly increase the cost of using the existing route.

Paul Mixon, an engineer with Staff's electric section, testified that the purpose of his testimony was to make his recommendations regarding Carroll's application and that his evaluation considered the appropriateness of the routing of the transmission line and facilities, the reasonableness of the associated costs, and the necessity of the proposed line and facilities. He testified that Carroll has experienced substantial load growth in the Jasper area over the past several years, that service reliability is becoming more of a problem, and that the existing 33-kilovolt facilities are very old and do not lend themselves to economical replacement. He testified that there was a need for the proposed transmission line and facilities and that the $2,510,000 estimated cost is reasonable in Staff's opinion. He also testified that he traveled along Carroll's proposed transmission line route as closely as possible and toured the surrounding areas to consider alternative routing for the proposed line and facilities. In doing so, he stated that he considered the impact on landowners in the area, the location of the facilities with respect to existing residential developments, existing public facilities, existing utility facilities, and the current use of the land involved and found that the proposed route takes into consideration property lines and existing roadways and was finalized with the objective of minimizing both the cost of construction and disturbance to the area. He summarized that, in Staff's analysis, the proposed transmission line and facilities represent a reasonable, efficient solution to the power supply problems which exist in the area, that there is a need for the proposed facilities, and that the proposed facilities are in the public interest.

Appellants point out that neither Carroll nor Staff presented any evidence that they took environmental considerations into account. Green testified in response to questioning about Crooked Creek that he was not aware of any special consideration given to it any more than other creeks or waterways through the area and that Carroll takes aesthetics into consideration and tries to accommodate the landowner when it sites a right-of-way. Mixon testified that he did consider the aesthetic displeasure that most people associated with a 69-kilovolt line when he considered the

proposed route and whether the route chosen was an appropriate route for the particular line and facilities. He stated that he also factored ecological and environmental disruption into his analysis and he considered the health and safety of the general public.

▇▇▇▇ From the evidence presented, we cannot say that the Commission's finding that Carroll's proposed route for the transmission line and facilities was reasonable is not supported by substantial evidence or that the Commission failed to regularly pursue its authority in granting Carroll a certificate of necessity and convenience over its proposed route. Although appellants argue that the Commission was not presented with any meaningful analysis of alternative rights of way, the testimony of Carroll witness Green clearly rebuts this argument. Green not only testified in support of Carroll's proposed route, but he also explained why the other routes were not feasible and presented extensive testimony concerning Carroll's existing route. His testimony was corroborated by Staff witness Mixon. Appellants also argue that neither witness Green nor Mixon took environmental considerations into account; however, Staff witness Mixon testified that he traversed the entire route and factored ecological and environmental disruption into his analysis. Obviously, we agree that the placement of any transmission line in a natural area will to some extent adversely affect the area. Nevertheless, after reviewing the evidence before the Commission, we cannot say that the Commission's decision is not supported by substantial evidence or that it has failed to regularly pursue its authority. Accordingly, we must affirm.

Affirmed.

PITTMAN, AREY, JENNINGS, and STROUD, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I respectfully dissent from the decision announced in the majority opinion because I believe that when the Arkansas Public Service Commission failed to provide appellants with notice of the application for Certificate of Public Necessity in a reasonable and timely manner, appellants were deprived of due process in this case. I also believe

that the majority's reliance on the "invited error" doctrine to find the Commission's error harmless is misplaced.

The facts reveal that Carroll Electric filed its application for Certificate of Public Convenience and Necessity on October 11, 1995. The hearing was set for February 20, 1996; however, appellants were not notified of the application until January 18, 1996, ninety days after the filing date. However, this was but thirty-three days before the hearing. The majority concedes that Carroll did not act reasonably in waiting ninety days before giving notice to appellants for a hearing set to begin only thirty days later, but nevertheless reasons that no due process violation occurred.

As the supreme court stated in *Davis v. Schimmel*, 252 Ark. 1201, 482 S.W.2d 785 (1972), the Due Process Clause of the Fourteenth Amendment is satisfied if:

> the property owner has reasonable notice and a reasonable opportunity to be heard and to present his claim or defense, or to protect and enforce his rights, before a tribunal having power to hear and rule his cause, due regard being had to the nature of the proceeding.

*Id.* at 1207-08, 482 S.W.2d at 789 (1972) (citing *Dohany v. Rogers*, 281 U.S. 362 (1930)). Where appellants did not receive reasonable notice of the application affecting their property and the hearing on that application, they were not afforded a meaningful opportunity to prepare and present a defense and were deprived of due process protection. The procedure followed in this case was not fair by any means when one considers that Carroll Electric and the PSC staff separately pre-filed testimony supporting the application before appellants even *knew* that an application had been lodged.

The majority excuses this glaring constitutional violation by concluding that appellants committed "invited error." The doctrine of invited error prevents an appellant from requesting a ruling by the trial court and then complaining of that ruling on appeal. *Security Pac. Hous. Serv. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993). The majority has concluded that appellants committed invited error by consenting to or acquiescing in the

Commission hearing. To the contrary, when appellants received notice of the hearing, they promptly filed a motion to intervene and also filed a motion for continuance in order to prepare a proper defense. The ALJ granted the motion to intervene, but denied appellants' motion for continuance. Appellants were, therefore, compelled to appear on February 20, 1996, to present some proof supporting their position that the certificate should not be granted to Carroll. Had they not appeared their absence would have prevented any challenge whatsoever.

In the order denying appellant's motion for continuance, the ALJ ruled that appellants could renew their motion for continuance after the hearing. Appellants preserved their objection regarding the continuance issue by insisting that the ALJ note their objection to his denial of their motion at the same time that they informed the ALJ that they would not present any expert testimony. The ALJ gave them ten days following the hearing in which to decide whether to present expert testimony.

Appellants did not invite error in this case by requesting ten days following the hearing to submit additional testimony. Appellants simply attempted to do what any litigant would do — attempt to salvage a case that had suffered a fatal blow. Furthermore, the grant of additional time in no way remedied the due process violation that occurred when the Commission denied appellants' continuance motion after permitting Carroll Electric and the PSC staff to submit pre-filed testimony before the appellants had notice of the hearing.

This unjust result arises from the very conduct that the Due Process Clause was intended to protect citizens from suffering. It is regrettable that we will not discourage other litigants from employing such underhanded tactics in order to deprive property owners of a fair opportunity to protect their interests. I dissent from the result and reasoning stated in the majority opinion.