CHICAGO MILL AND LUMBER CO. *v.* DIRECTORS OF
ST. FRANCIS LEVEE DISTRICT.

5-2926                                        366 S. W. 2d 184

Opinion delivered March 25, 1963.

[Rehearing denied April 22, 1963.]

*Daggett & Daggett,* By *W. H. Daggett,* for appellant.

*F. N. Burke, Jr.* and *Shaver & Shaver,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellant to quiet its title to certain land in Lee County, subject to the levee right-of-way of the St. Francis Levee District. The ultimate question is whether the district, as the holder of the dominant easement, or the lumber company, as the owner of the servient estate, is entitled to the proceeds derived from the cutting and sale of mature timber within the right-of-way. The chancellor awarded these proceeds, amounting to $3,270.14, to the levee district.

This 70-year-old district maintains 158.6 miles of main levee along the Mississippi River. For some years the United States Engineers have been in charge of new construction, while the district has been responsible for furnishing the right-of-way and maintaining the levee system.

That portion of the right-of-way now in question was acquired by the district, partly by purchase and partly by condemnation, from the appellant's predecessors in title, between 1904 and 1942. In 1957 the Engineers decided to enlarge this part of the levee and to that end directed the district to remove the timber growing in the borrow pits on the river side of the levee. After this suit was filed the lumber company and the levee district co-operated in removing the timber and put the proceeds in escrow, subject to the final decision in the case.

The district contends that for many years it has kept a strip of growing timber next to the levee, as a protection against the washing action of flood waters, and that the proceeds from the sale of this timber should go to the district. The landowner replies that the protecting role of the trees came to an end when they were cut down, so that the money from selling the logs belongs to the landowner. We are of the opinion that the district has the stronger side of the argument.

That the levee ought to be sheltered behind a line of woods is shown by the weight of the evidence. This is an earthen levee, about 25 feet high and tapering from a 200-foot base to a 25-foot crown. No trees are permitted upon the levee itself, which is kept as pastureland to hold

its topsoil in place. The directors have found it best to leave the borrow pits on the river side of the levee, for their location behind the structure would tend to weaken it by seepage and boils.

Since about 1940 the levee board has consistently maintained a growth of trees, mostly cottonwood, in the borrow pits. When flood waters rise against the side of the levee the trunks and foliage of this timber tend to obstruct the wind-driven waves and protect the levee by reducing the washing action of the river. For more than twenty years the district has kept signs posted along the levee, giving notice that the timber is reserved for wash protection and is not to be cut. The directors have guarded the timber against trespassers and, when possible, have collected the value of trees wrongfully cut. The district's chief engineer testified that no timber had ever been sold (before this controversy) except some that had been damaged by fire or by storm.

Upon these facts the district is entitled to prevail. Even though it owns only an easement, there is no inequity in the recognition of the district's claim. Under our law it is firmly settled that when a permanent easement is taken by eminent domain, depriving the owner of the use of the property, the compensation must equal the full value of the land, as if a fee were being acquired. *Railway* v. *Combs,* 51 Ark. 324, 11 S. W. 418; *State ex rel. Pub. & Parks Comm.* v. *Earl,* 233 Ark. 348, 345 S. W. 2d 20. Hence, with respect to the easements obtained by condemnation, the district is not receiving an undeserved windfall. With respect to the easements that were purchased, the district's grantors did not insert in their conveyance any reservation of timber rights.

Even in the case of a permanent easement the landowner retains timber rights to the extent that their assertion is not inconsistent with the rights of the condemnor. *Patterson Orchard Co.* v. *Southwest Ark. Utilities Corp.,* 179 Ark. 1029, 18 S. W. 2d 1028, 65 A.L.R. 1446. Here, however, the timber was unquestionably needed by the district in its long-term program of levee protection. Its engineer testified that the trees in dispute

were grown for the purpose of wave wash protection and were being sold only on account of the levee enlargement. For more than two decades the district invested its funds in safeguarding this timber. Under the district's long-standing policy it is faced with the expense of planting and maintaining a new strip of woodland in front of the section to be built by the U. S. Engineers. In the circumstances the district has demonstrable property rights in the timber it has nurtured for twenty years. To turn the harvest over to the landowner, leaving the district to bear the expense of undertaking its program anew, would clearly result in unjust enrichment to the owner of the servient estate.

The holding in *Nicholson* v. *Board of Mississippi Levee Com'rs*, 203 Miss. 71, 33 So. 2d 604, relied upon by the appellant, is not in point. There the court, in holding that the levee district had an easement rather than a fee, awarded the landowner the timber that was cut from the right-of-way. But the distinguishing factor is that in the *Ncholson* case, unlike the one at bar, there was no contention that the timber had ever been needed for levee purposes. To the contrary, the court said: "Indeed, the bill states and the demurrer admits, that, the timber which is the subject of this controversy, is not needed or useful in the construction or repair or maintenance of levees."

Affirmed.

ROBINSON, J., dissents.