Louis Minkowitz et al *v.* City of West Memphis et al

5-3994                                    406 S. W. 2d 887

Opinion delivered October 17, 1966

*Ballon & Farrar* and *Nance & Nance,* for appellant.

*W. H. Dillahunty,* for appellee.

Paul Ward, Justice. Appellants' land, which was located at the end of an airport runway, was condemned to establish a clear zone or avigation easement. A jury trial resulted in a verdict and judgment, giving each appellant the sum of $2,500 as damages. On appeal appellants rely on only one point for a reversal—the trial court erroneously instructed the jury relative to the measure of damages. Below is set out a summary of the pertinent facts involved.

The airstrip in question lies just west of the City of West Memphis. It runs north and south, with the north end abutting or near Highway No. 70 which runs east and west.

Appellants, Louis Minkowitz and Louis Slepian (d/b/a United Iron and Metal Company) each own a

ten acre parcel of land involved here. Each parcel is one-half mile long, and the south end abuts the north side of said Highway No. 70—directly north of the north end of said airport runway. For several years appellants have operated a business on said strips of land.

On September 17, 1964 the City of West Memphis enacted Ordinance No. 467 which established a clear zone or avigation easement across and over a portion of appellants' land. About a year later appellants filed a complaint against the City in circuit court to recover damages for the unlawful taking of their property. The City filed a counter-claim asking that the property be condemned for "a clear zone or avigation easement," and asking that the compensation due appellants be determined by a jury.

At a pre-trial conference the parties agreed: (a) that the City was entitled to an avigation easement, and (b) that the only issue to be determined by the jury was the compensation to which appellants were entitled.

The jury trial which ensued resulted in a judgment against the City in favor of each appellant in the amount of $2,500.

For a reversal, it is the sole contention of appellants that it was error for the trial court to give instruction No. 2 which, in material part, reads:

"Now, you will find for the plaintiffs in some amount that you think will compensate them for the property rights taken. In finding for the plaintiffs, Louis Minkowitz and Louis Slepian, against the City of West Memphis, you must fix the amount of money which will reasonably and fairly compensate them, each of them, for the difference in the value of the property involved immediately before and immediately after the restrictions placed or imposed on the property and which limits the height of buildings or other objects, and the restrictions imposed on the

property under the terms of the ordinance and by the taking of a clear zone approach or avigation easement.''

Appellants sole objection to the above instruction is that it does not allow the jury to award them the full value of the land included in the easement.

It is our conclusion that the trial court was correct in giving the instruction.

It is not denied that the City did not, under the ordinance or the judgment, take a fee in the land subjected to the easement. The fee still remains in appellants. The great weight of the evidence is that said land is still usable to a large degree. One witness testified that each parcel had not been damaged more than $1,-000, and another witness thought there had been no damage. The *extent* of damage is, of course, not an issue here. The ordinance permits the use of the land by the landowners by permitting buildings and trees of heights not greater than from 25 to 75 feet—depending on the distance from the runway.

In situations such as obtain here the well established rule appears to be that the land owner is entitled to recover the difference in value of the land before and after the imposition of the restrictions. See: *Ackerman* v. *Port of Seattle,* 55 Wash. 2 400, 348 P 2 664; *Hopkins* v. *United States,* 17 3 F. Supp. 245.

As we understand appellants' position, they do not question the above cited authorities because, they say, our own decisions are to the contrary. In support they rely on *Baucum* v. *Arkansas Power & Light Co.,* 179 Ark. 154, 15 S. W. 2d 399; *Arkansas Power & Light Co.* v. *Morris,* 221 Ark. 576, 254 S. W. 2d 684, and; *State ex. rel. Publicity & Parks Commission* v. *Earl,* 233 Ark. 348, 345 S. W. 2d 20.

In our opinion the above decisions are not in con-

flict with the result we have reached, since they are distinguishable on the facts from the case here under consideration. Here, as pointed out previously, appellants' entire use of the land has not been taken, nor can it ever be taken without remuneration. This is not the situation in the cited cases. In the *Baucum* case the court pointed out ". . . that the company acquired by condemnation proceedings the power to make such use of right-of-way as its future needs required . . . ." In the *Morris* case we made the same statement quoted above. In the *Earl* case, which also involved the taking of land near the landing strip for airplanes, there appears this distinguishing sentence: "The court"—(sitting as a jury)—"concluded that appellants' use of the said strip destroyed *permanently all use* and benefit to appellees, and therefore appellees should be paid full value." (Emphasis ours.)

Affirmed.

McFADDIN, J., dissents.

ED. F. McFADDIN, Justice, dissenting. I think the holding of the Majority in the present case is in direct conflict with our holding in *State ex rel Publicity & Parks Comm.* v. *Earl,* 233 Ark. 348, 345 S. W. 2d 20. In that case, as here, land adjacent to an airport was being taken for the protection of the planes entering and leaving the airport; and we held in that case that the landowner was entitled to recover the full value of the land for the easement taken. I copy from that opinion:

> "Appellant states that 'The court erred in fixing the valuation of the easement as if it were a taking in fee.' It will be recalled that appellant sought to obtain a fee in the 350-foot strip of land to be used for a runway, but asked for only a permanent easement as to the 400-foot strip on each side of the said runway. The trial court concluded that appellant's use of the said strip destroyed permanently all use and benefit to appellees, and therefore that

appellees should be paid full value. After careful consideration we have concluded that the trial court was correct.

Although the exact issue here presented has never been passed on by our court we do find support for the trial court's determination in the case of *Baucum* v. *Arkansas Power & Light Co.,* 179 Ark. 154, 15 S. W. 2d 399; *Texas Illinois Natural Gas Pipeline Co.* v. *Lawhon,* 220 Ark. 932, 251 S. W. 2d 477; and *Arkansas Power & Light Co.* v. *Morris,* 221 Ark. 576, 254 S. W. 2d 684. In the *Baucum* case above cited, we find this statement: 'We adopt the view of the Supreme Court of Tennessee in the case of *Kentucky-Tennessee Light & Power Co.* v. *Beard,* 152 Tenn. 348, 277 S. W. 889 where it was held, after a review of the authorities (which we do not repeat), that where an electric light and power company, in condemnation proceedings, acquired a permanent easement across the land of another, it became liable for the full value of the right-of-way as if the fee had been taken.' In the *Lawhon* case above cited this court said: 'Under the law of this State, the owner of land is entitled to be paid the full value of the land embraced within the right-of-way easement, as if the fee had been taken even though the landowner, after the pipe line was constructed, had the right to continue using the surface of the right-of-way for farming or other purposes not inconsistent with the use of the easement.' "

The Majority attempts to distinguish the Earl case from the present case by inferring that there is only a "small taking" of the use of the land in the case at bar. I consider the taking in the present case to be as great as was the taking in the Earl case. In Section 5 of the Municipal Ordinance[1] of the City of West Memphis

[1]Section 5 reads: "Use Restrictions—Notwithstanding any other provisions of this ordinance, no use may be made of land within any zone established by this ordinance in such a manner

there is a restriction in the use of the appellants' land. In Section 6 of the Ordinance[2] the City has the right to go on the land of the appellants at any time it desires and install and maintain markers and lights for the protection of planes entering or taking off from the West Memphis Airport. In Section 7 of the West Memphis Ordinance[3] the landowners are forbidden to make any material change in the use of the land by erection of structures or growth of trees. With all of these provisions in the West Memphis Ordinance, I think the jury should have been allowed to find:

(a) what portion of the use of the appellants' property was fully taken; and

(b) the value of the fee of such portion so fully taken.

The only way I can harmonize our holdings in the

as to create electrical interference with radio communication between the airport and aircraft, make it difficult for flyers to distinguish between airport lights and others, result in glare in the eyes of flyers using the airport, impair visibility in the vicinity of the airport, or otherwise endanger the landing, taking-off or maneuvering of aircraft."

[2]Section 6 reads: "(b) Marking and lighting—Notwithstanding the preceding provisions of this section, the owner of any nonconforming structure or tree is hereby required to permit the installation, operation, and maintenance thereon of such markers and lights as shall be deemed necessary by the West Memphis Airport Commission to indicate to the operators of aircraft in the vicinity of the airport, the presence of such airport hazards. Such markers and lights shall be installed, operated, and maintained at the expense of the West Memphis Airport Commission."

[3]Section 7 reads: "(a) Future Uses. Except as specifically provided in paragraphs 1, 2 and 3 hereunder, no material change shall be made in the use of land and no structure or tree shall be erected, altered, planted or otherwise established in any zone hereby created unless a permit therefor shall have been applied for and granted. Each application for a permit shall indicate the purpose for which the permit is desired, with sufficient particularity to permit it to be determined whether the resulting use, structure or tree would conform to the regulations herein prescribed. If such determination is in the affirmative, the permit shall be granted."

Earl case and the previous cases would be on the basis of the full value of the land for the easement taken.

Therefore I dissent from the Majority in the case at bar.