ARKANSAS POWER & LIGHT Company
v. John T. HASKINS

75-98                                          528 S.W. 2d 407

Opinion delivered October 20, 1975

*House, Holmes & Jewell,* for appellant.

*James R. Rhodes, III,* for appellee.

ELSIJANE T. ROY, Justice. Appellee, John Haskins, owned a 39 acre tract of land located approximately ten miles northwest of the city limits of Little Rock, Arkansas. On March 8, 1973, Arkansas Power & Light Company condemned a right-of-way across some of the land owned by the appellee. This right-of-way is a strip of land 180 feet wide and 1004 feet long at the center line as it passes through the Haskins property. The parties stipulated the total property taken was 4.2 acres. Mr. Haskins did not make his residence on the property. He has raised goats and horses on the property, cleared most of the large rocks and cut many of the trees that were originally present when he purchased the land in September of 1964.

The landowner not being satisfied with the compensation offered, this cause came on for trial November 26, 1974.

The trial resulted in a jury verdict for the appellee in the amount of $17,000.00.

For reversal appellant relies upon several points. It first contends that the testimony of appellee characterizing the tower as an attractive nuisance was error which was later compounded by the court's refusal to give an instruction offered by appellant in an effort to mitigate the prejudicial effect of this alleged evidentiary error.

The questioned testimony was as follows:

Q. He also mentioned to you about fencing and asked you whether or not you thought fencing expenditures helped in developing this property to its highest and best use. Do you contemplate any more fencing expense after this, Mr. Haskins?

A. Yes, I do.

Q. Tell the jury why.

A. Well, I think that . . . of course, I don't know what I am going to do to the property now, but if I live and relocate in another area, I think the right-of-way should be fenced. I have a nine year old child and the last time we were out there, they have steps on this huge tower, she and her girlfriend were about Forty feet up the tower, there's a ladder that they can go right up and I don't think, you know, I don't think I want her to bring children out there and play with her on this attractive nuisance that exists on the property, so I plan to fence it, yes, sir.

Appellant's requested Instruction No. 9 which the court refused follows:

"*No. 9*

"You are instructed that in determining the amount of compensation to which the landowners are entitled in this action, you will not consider any injury

or damage which they might sustain in the future by reason of the power company's negligence in the maintenance and operation of its power line in the future. Should such arise, the landowners will then have a separate cause of action. You will consider only those factors that are real and capable of ascertainment, and will not consider prospective, speculative or imaginary damages in arriving at compensation."

Appellant places great emphasis on appellee's alleged misuse of the doctrine of "attractive nuisance." A less strained interpretation of appellee's words can be gleaned from the context in which they were presented. The appellee used the words "attractive nuisance" in everyday speech connotation, and it was doubtless applied more as an expression of the allure that such a tower might present to a child, than with an idea to convey to the jury the legal elements comprising the term. Neither the term nor the legal significance of the doctrine of attractive nuisance is at issue here.

From the above testimony it can be seen that appellee's intent was to show the effect such a structure might have on the market value of his land and the use of the phrase "attractive nuisance" was nothing more than a method of expressing himself. Certainly such a remark would have no prejudicial effect on a jury, which in all probability would attach no more significance to it than any other words indicating the tower would be attractive to children. Appellee had a right to show every element of damage to his property which would affect the market value and this was certainly one of them.

In *North Arkansas Western Railway Co.* v. *Cole*, 71 Ark. 38, 70 S.W. 312 (1902) the Court held that increased risk of fire was a factor which could be considered in establishing the market value of the property in question.

In *Hicks* v. *United States for Use of T.V.A.*, (6th Cir.) 266 F. 2d 515 (1959), proceeding was brought by the Tennessee Valley Authority against the landowner to condemn an easement strip across his farm for erection of steel towers for power lines. The Court held that the apprehension of injuries to person or property is founded on practical experience and

may be taken into consideration insofar as the lines and towers affect the market value of the land. The Court held that it is a question for the jury whether a reasonable apprehension of danger from inherent defects and unavoidable accidents may exist, and if so, such an apprehension so far as it depreciates the present market value of the land not taken is an element of incidental damages. The Court states "that from this record with its details as to the structure of the power lines and towers we find that the apprehension is reasonable."

In the present case there was testimony by the witnesses that the towers extended upward in excess of one hundred feet and that the crossbars or arms span some ninety feet. There were fourteen wires carrying approximately 500,000 volts running the length of the property. Apprehension of danger here is very reasonable. The Court held in *Pacific Gas & Electric Company* v. *W. H. Hunt Estate Company*, 49 C. 2d 565, 319 P. 2d 1044 (1957), "[T]hat a line carrying 220,000 volts of electricity is a dangerous instrumentality is a fact too well and commonly known to be disputed. * * * A reasonably foreseeable hazard to be created by stringing a 220,000 volt power line for more than three miles across one's land is manifestly a proper item to be considered in determining the damage to the property, not only to the land underlying the easement but also to all the land which conceivably might be affected by the hazard. Evidence . . . tending to show what practical uses of the land . . . would give rise to foreseeable hazards because of the construction and operation of the high-voltage line is pertinent to the issue being tried. *No reasonably prudent person should be expected to purchase the land here in question without giving heed to the potentials of plaintiff's power line* as well as practical uses of the land beneath and surrounding it, and the possible effects of the hazard upon the uses for which the land was otherwise suitable." (Citations omitted) (Emphasis supplied).

Here the testimony that the tower had a ladder attached which was close enough to the ground to be reached by children presented a factor which certainly would be considered by parents desiring to purchase property for a home site. To ignore the impact of a transmission line tower in

terms of its capacity to entice small visitors is to be blind to common experience. It is unrealistic to expect that a tower wouldn't pose a concrete and legitimate worry to possible purchasers of appellee's land, especially if children were involved.

Since the questioned testimony was admissible, giving of Appellant's Requested Instruction No. 9 would have been misleading and confusing to the jury and the Instruction was properly refused.

Appellant's next objection was that the trial court erred in "permitting appellee's value witness, William R. Meeks, Jr., to compare lot sales to the landowner's 40 acre tract." In this connection it is to be noted that the appellee's witness only used the questioned testimony as one element of his evaluation in arriving at his opinion of the market value. This was not the only basis and used in conjunction with other testimony and considerations it was permissible.

In fact, the witness used the sale of the 40 acre subdivision to show a demand for such development. This is indicated by the witness' testimony that "based on Twenty-Five Hundred Dollars an acre for (136.4 acres) half of which is extremely rough and half is good buildable territory, I considered the basic price of Twenty-Five Hundred Dollars an acre for the subject property." This 136.4 acre tract was raw acreage similar to appellee's property, infra. The case at bar is similar to the case of *Arkansas State Highway Comm.* v. *Sargent*, 241 Ark. 783, 410 S.W. 2d 381 (1967). In the *Sargent* case the landowner's witnesses testified on cross-examination that they had considered the prices at which residential lots in the vicinity of the landowner's property were selling and mentioned the prices. The Court held that the "testimony . . . was not rendered without any reasonable basis merely because . . . they based figures partially on what lots from properties were selling for in the area."

In eminent domain proceedings land is evaluated on the basis of the most valuable use to which it can be put, comprehending any use to which it is clearly suited. In *Arkansas State Highway Comm.* v. *Griffin*, 241 Ark. 1033, 411 S.W. 2d 495

(1967) we stated that the measure of compensation for condemned land includes its "availability *for any use* to which it is plainly adapted as well as the most valuable purpose for which it *can be used* and will bring most in the market." (Emphasis supplied by the Court). See, in addition, *Arkansas State Highway Comm. v. Brewer,* 240 Ark. 390, 400 S.W. 2d 276 (1966) and *Arkansas State Highway Comm. v. Hughes,* 240 Ark. 962, 403 S.W. 2d 80 (1966). Appellant complains that the comparisons drawn by appellee's witnesses are insupportable because of claimed dissimilarities between the condemned land and the land sales with which it is compared. It is, of course, clear that one method of ascertaining a market value for condemned land is by the expedient of comparable sales, *Nichols on Eminent Domain,* § 12.1, 3rd Ed. (1962). As we said in *Arkansas State Highway Comm. v. Witkowski,* 236 Ark. 66, 364 S.W. 2d 309 (1963), "Similarity does not mean identical, however it does require some reasonable resemblance." We have found to be valuable considerations of "location, size and sale price" and whether the compared lands are "improved, unimproved or developed." In *Arkansas State Highway Comm. v. Sargent,* supra, we pointed out that "reasonable latitude must be allowed in evaluating sales and adjusting or compensating for differences in similar lands." When we consider the testimony available concerning comparisons made between the condemned land and land sold nearby in the light most favorable to appellee, it becomes evident that appellee's comparisons are in compliance with the standards reflected in *Witkowski,* supra. The pattern of land development in close proximity to appellee's land indicates that appellee was not unreasonable in asserting that his land would be best suited to residential development. The land in question is accessible to highways, a water system and is close by other lands which have already been devoted to residential development. Topographically appellee's land compares favorably to neighboring lands upon which houses have already been built. Mr. Meeks' comparisons weren't confined merely to lands which had been subdivided but included also property sold in bulk, and we conclude that a sufficient showing of similarity has been made between appellee's land and those tracts to which he compared it. Furthermore, the $17,000.00 award by the jury appears reasonable in light of the above factors and the admissible

testimony which varied from a low of $5,000.00 to a high of $40,000.00.

Appellant's last point is that "The Trial Court Erred in Refusing to Give Plaintiff's (Appellant's) Requested Instructions No. 5 and 8." The questioned instructions read as follows:

### No. 5

"You are instructed that in acquiring the right-of-way across the land of the defendants, the power company does not acquire the fee simple title to said lands but only acquires the right to use the lands necessary for the erection and maintenance of its electrical lines and to erect and maintain its lines thereon and the right to enter upon said lands at all times and in reasonable and necessary manner for the erection and *maintenance* of its lines. The landowner retains the ownership and right to use said lands at all times and for all reasonable purposes not inconsistent with the rights and uses of the power company."

### No. 8

"In determining whether or not the lands outside the right-of-way have been diminished in value by reason of the taking of the right-of-way, you should consider the fact that defendants have the right to cultivate or otherwise use said right-of-way so long as such use does not interfere with the operation of plaintiff's electrical facilities."

This last contention of appellant is also without merit. To have given the requested instructions would have been error. In *Ark-La Gas Co.* v. *Burkley*, 242 Ark. 662, 416 S.W. 263 (1967), the Court held the fact that the landowner was given permissive use of the right-of-way after construction of the pipe line could not be used to reduce the amount allowed as compensation for the taking. In *Burkley* the Court stated:

"In *Baucum* v. *Arkansas Power & Light Company*,

Supra, a case involving an electric transmission line, this Court, quoting with approval *Kentucky Tennessee Light & Power Company* v. *Beard*, 152 Tenn. 348, 277 S.W. 889, held:

" 'Where an electric light and power company, in condemnation proceedings, acquired a permanent easement across the land of another, it became liable for the full value of the right-of-way as if the fee had been taken. And the fact that the owner was given the permissive use of the right-of-way could not be considered in reduction of the sum to be allowed as compensation.'

\* \* \*

"The rule of the *Baucum* case was also followed in *Arkansas Power & Light Company* v. *Morris*, 221 Ark. 576, 254 S.W. 2d 684, another electric transmission line case, and in *State ex rel Publicity and Parks Commission* v. *Earl*, 233 Ark. 338, 345 S.W. 2d 20, a case involving easements across lands adjacent to an airport."

In *Patterson Orchard Co.* v. *Southwest Ark. Utilities Corp.*, 179 Ark. 1029, 18 S.W. 2d 1028 (1929), the appellee (condemnor) contended that it should not be charged with the full value of the land actually taken since the landowner has the right to enter upon the same at all reasonable times and for all reasonable purposes not inconsistent or in interference with the rights of the appellee. The Court stated that the landowner is entitled to the full value of the land taken and such damage to the remainder of the orchard as might be sustained by reason of the erection of the trensmission line across same.

Finding no error the judgment of the trial court is in all things affirmed.