Robert J. LOYD & Iris June LOYD,
Husband & Wife et al v.
SOUTHWEST ARKANSAS UTILITIES
CORPORATION

78-85                                   580 S.W. 2d 935

Substituted Opinion on Denial of Rehearing
delivered May 21, 1979
(In Banc)

*Crouch, Blair, Cypert & Waters,* for appellants.

*James G. Mixon,* of *Little, Lawrence, McCollum & Mixon,* for appellee.

DARRELL HICKMAN, Justice. This is an appeal of an eminent domain case from the Benton County Circuit Court.

The condemning authority is the Southwest Arkansas Utilities Corporation, appellee, and the landowners are Robert Loyd and Iris June Loyd, husband and wife, appellants. Southwest condemned a one hundred foot strip of land through property owned by the Loyds to construct an electric transmission line. One tract of land consisted of about thirty acres and is owned by Mrs. Loyd; the other land consists of a 359 acre farm owned jointly by the Loyds.

There is no question raised on appeal regarding Southwest's right to take the one hundred foot strip of land nor the damages that were awarded for that taking. The only questions raised on appeal relate to Southwest's taking of an undefined right of ingress and egress over *all* the Loyds' property in addition to the one hundred foot right-of-way taken by Southwest. The jury awarded the Loyds one dollar for the additional easement on each tract of land.

The Loyds generally objected to the taking and tried the

case on the theory that Southwest's taking of such a right of ingress and egress amounted to a taking of an easement and it should therefore pay for the full market value of all the Loyds' property. We agree with the Loyds that the judgment of the trial court must be reversed.

Southwest, as a power company, filed its complaint to condemn the Loyds' land pursuant to Ark. Stat. Ann. § 35-301, *et sequentes*. These statutes grant the power of eminent domain to corporations such as Southwest to acquire rights-of-way.

Southwest's complaint, in addition to seeking a permanent one hundred foot right-of-way across the Loyds' land to construct and maintain an electric transmission line, also sought:

> . . . The right of ingress and egress to, from and over said lands for doing anything necessary or useful to the enjoyment of the easement herein granted.

The Loyds, by pleadings, objected to the taking and to the court's initial order granting Southwest possession of the land and the estates as sought in Southwest's complaint.

Before trial Southwest sought an injunction against the Loyds to prevent them from interfering with Southwest's right of ingress and egress as previously granted by the court's order of possession. The trial court, by order, made the following finding:

> The Court finds that it is necessary that the plaintiff [Southwest] from time to time, and at places known, and places which are presently unknown, go across, over and upon other and adjoining lands owned by the defendants in order to have all reasonable ingress and egress to the land described [the hundred foot strip of land]. . . . for the purpose of maintenance and operation of said transmission line and facilities cnnstructed. . . .

The court denied in this same order the right of Southwest to use its right of ingress and egress for purposes of construction of the transmission line.

It was the Loyds' position at the trial and on appeal that the taking of the right of ingress and egress was a taking of an

easement; and, according to the Constitution of Arkansas and our decisions, Southwest had to pay the Loyds the full market value of the land as though it were taken in fee. This argument is based on our decision in *Baucum* v. *Arkansas Power & Light Co.*, 179 Ark. 154, 15 S.W. 2d 399 (1929), and related cases. In the *Baucum* case we decided that when a power company acquires by condemnation a permanent right-of-way across the land of others, it becomes liable for the full value of the right-of-way as if the fee had been taken. This is based on an interpretation of the Arkansas Constitution, Article 12, § 9, which reads:

> No property, *nor right-of-way*, shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, in money, or first secured by him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law. (Emphasis added).

We have consistently followed the *Baucum* case since. *Arkansas Louisiana Gas Co.* v. *Burkley*, 242 Ark. 662, 416 S.W. 2d 263 (1967). (A temporary easement is valued as the fair rental of the property during the time it is used. *Mobley Const. Co.* v. *Fox*, 201 Ark. 646, 146 S.W. 2d 905 [1941]).

The rationale of the *Baucum* case was that ordinarily a condemning authority, such as a power company, would lay a pipe line or erect a transmission line under or on the land and effectively take the land for all practical purposes. Structures could not be built over a pipe line nor under a transmission line and whatever incidental value a landowner might have in growing a crop on such land was insignificant compared to the taking. The Loyds argue *Baucum* applies to the easement taken in this case.

The Loyds' expert witness testified extensively as to the damages the Loyds would suffer from the imposition of such a right of ingress and egress on their property and concluded, the damages, assuming the taking was a permanent right-of-way as defined in the case of *Baucum, supra,* would be the market value of the farm.

The court struck all the testimony of the expert witness and refused all instructions offered by the Loyds supporting their theory of the case.

Southwest argued to the trial court and on appeal that the right of ingress and egress taken was merely a "secondary easement." Although the landowner must be paid for this taking of a valuable property right, payment as though it were taken in fee is unreasonable; that is because the right of ingress and egress sought would not prohibit the landowner from utilizing the property by building on it or developing it. Also, although permanent, the right of ingress and egress sought does not fit in the same category as a permanent right-of-way that is normally acquired by a power company to be used for locating a transmission line or pipe line.

The trial court adopted Southwest's position and instructed the jury that the taking was really a "secondary easement." The court's instruction reads in full:

INSTRUCTION NO. 8:

In connection with the terms, "egress" and "ingress" as it has been used in this trial you are told that under the law once an easement such as the one in this case has been acquired for a right-of-way then the condemnor, in this case Southwest Electric Arkansas Utilities, acquires a secondary easement over other adjacent land owned by the defendant. You are further told that this secondary easement may be exercised when necessary and only in a reasonable manner in order to get on and off the right-of-way acquired in this action. You are further told that the secondary easement is a property right for which the plaintiff may be required to pay if you find under the facts of this case that a reduction in the fair market value of the defendant's remaining land has occurred as a result of the imposition of the secondary easement.

Southwest's argument is that we should adopt the views of the Virginia Supreme Court and that either our decision in *Baucum* does not apply to this case or should not be extended to the facts of this case; that is, Southwest should not be required to pay for the right of ingress and egress as though the land were taken in fee. Also, that the law permits such a tak-

ing and that the measure of damages should only be the difference between the value of the land before the "secondary easement" was taken and the value of the land after it is taken.

The Virginia Supreme Court, cited by Southwest, decided that although such a right of ingress and egress must be paid for, it is really a "secondary easement" to a right-of-way such as that acquired by Southwest. *Virginia Electric & Power Co. v. Webb,* 196 Va. 555, 84 S. E. 2d 735 (1954). The Virginia court in its decision quoted a definition of a "secondary easement" from Thompson on *Real Property.* That definition, in part, is as follows:

> The right to enter upon the servient tenement for the purpose of repairing or renewing an artificial structure, constituting an easement, is called a secondary easement, a mere incident of the easement that passes by express or implied grant, or is acquired by prescription. . . This secondary easement can be exercised only when necessary, and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement.

2 Thompson, *Real Property,* (Perm. Ed.), § 676, p. 343.

By definition a secondary easement goes with an existing easement and consequently would not have to be separately acquired. It either exists or it does not exist as an incident to an easement.

A secondary easement, then, is simply a legal device that permits the owner of an easement to fully enjoy all of the rights and benefits of that easement. Conversely, it is a legal device that prohibits an owner of a servient tenement from interfering with an easement owner's enjoyment of the full benefits and rights of an easement.

However, a secondary easement does not necessarily exist in every case. For example, a highway department or railroad company would not have a right of ingress or egress over all adjacent land to its rights-of-way. It is not needed because access is inherent in such easements or rights-of-way. Nor would one exist where access to a right-of-way, such as that taken in this case, already exists.

We have never had an occasion to recognize a "secondary easement" and there is no need to do so in this case, because what Southwest sought and acquired in this case was not a secondary easement but a separate and distinct right of ingress and egress over all the Loyds' property.

While we do not find it necessary to rule at this time that a secondary easement exists in some cases, neither do we reject the idea that such a right exists.

The Virginia decision and Southwest's position is not only inconsistent, it is a position that can only mislead a jury that must decide fair compensation for any taking. It should be pointed out that the Virginia court does not follow our rule of compensation regarding the acquisition of a right-of-way by eminent domain.

It was only in the trial court's instruction that this right of ingress and egress was called a secondary easement and although the court limited it to ". . . when necessary and only in a reasonable manner", there was no essential change of the right granted in its original order of possession as later modified.

The right of ingress and egress obtained by Southwest in this case resembles very nearly, if it is not, what we commonly refer to as an easement. A general definition of an easement is a right which one person has to use the land of another for a specific purpose. A right-of-way is an easement and is usually the term used to describe the easement itself or the strip of land which is occupied for the easement. 25 Am. Jur. 2d Easements & Licenses, §§ 1 and 8. In this case the right of ingress and egress was the right granted to Southwest to go on and off, at places known and unknown, upon, over and across all the lands of the Loyds. In other words, any vehicle that would be needed for the maintenance or operation of the line could be driven across the Loyds' land.

Southwest's acquisition of its right of ingress and egress in this case is based on its right to condemn land pursuant to Ark. Stat. Ann. § 35-301, et seq., and Ark. Stat. Ann. § 73-276, et seq. Such statutes delegating the power of eminent domain are strictly construed in favor of the landowners because the power is in derogation of a common right. *City of Little Rock v. Sawyer,* 228 Ark. 516, 309 S.W. 2d 30 (1958). The

only right of access granted by these statutes is the right to acquire a right-of-way or reasonable access. Ark. Stat. Ann. §§ 35-302 and 73-276.15. These statutes do not elaborate to include any right of ingress or egress such as that sought by Southwest in this case. A right-of-way must be surveyed and located, that is, defined. Ark. Stat. Ann. §§ 35-404 and 35-305. Southwest's was not located, nor was it reasonable, as we have indicated. Our decision does not in any way relate to any right by common law that Southwest may have to reach its property, such as a way of necessity. Nor do we preclude the right to a secondary easement as we understand it.

Consequently, what Southwest sought and acquired, in addition to its one hundred foot right-of-way, was not authorized by the statutes. The Loyds' argument that Southwest pay the full price for the farm is unreasonable. At the same time it is unreasonable for Southwest to attempt to acquire a cheap right-of-way by calling it a secondary easement.

In summary, we agree with the Loyds that the case must be reversed, but not for the same reasons. We have ruled in effect that Southwest cannot acquire the easement that it sought.

We also disagree with the trial court's characterization of the easement sought by Southwest, and the court's order in striking all the testimony of the expert witness. While the case is remanded, Southwest is not precluded from amending its pleadings and seeking other relief not inconsistent with this opinion.

The judgment of the trial court is reversed and the case remanded to the trial court for proceedings not inconsistent with this opinion.

Fogleman, J., concurs.

Fogleman, J., would grant the rehearing.

John A. Fogleman, Justice, concurring. I am both amazed and alarmed that this court would discuss an issue (1) not raised in the trial court, (2) not raised on appeal and

(3) upon which the parties did not want a decision. The excuse for doing so is not only unprecedented, it is revolutionary in Arkansas jurisprudence. The opinion is purely legislative in nature, not just in the sense of lawmaking, but also in the sense of determining the extent of a utility company's power of eminent domain. It makes policy determinations that should be left to the General Assembly. There is no reason for this gratuitous action, which is wholly unnecessary in giving an answer to the question the parties want answered. I have never before heard of a reversal of a judgment for a reason admittedly different from any reason relied upon by an appellant. The reason given for reversal is actually contrary to the position taken by appellants.

The majority has reversed the judgment on the nature and extent of the taking, regardless of the fact that appellants have clearly and fully waived any such objection. The case has been treated here as if the court were affirming a judgment adverse to appellee on the extent of the taking. The points for reversal stated by appellants do not even remotely approach the ground upon which the majority reverses the judgment. Every argument advanced here and every point for reversal stated by appellants was based on their contention that they were entitled to recover the full market value of the entire tracts through which the basic right-of-way passes, because of the secondary easement. In treating Ark. Stat. Ann. § 35-302 (Repl. 1962), appellants say:

> The statute makes it clear that if the company wishes to have a right of ingress and egress, or a "secondary easement" as it was called by the lower court, then such right and access must be obtained by condemnation, and all the rules for condemning property and the assessment of damages thereto apply.

In objecting to the court's instruction that appellants should be compensated for the value of the fee in the 100-foot easement, but that otherwise the measure of just compensation was the difference in the market value of the whole tract before the taking and its value after the taking, appellants' counsel said:

> Defendant landowners object to the court's Instruction No. 3 because, while it correctly states the law

regarding the 100-foot easement, it does not accept the fact that the right of ingress and egress is an easement, and that it should also be compensated by the condemning authority as if the taking were in fee.

Appellants complain here about the failure of the court to give three instructions they requested. Although two of these relate only to their theory that they were entitled to recover the full value of their farms crossed by the right-of-way, the first instruction they requested read:

You are instructed that a right-of-way for ingress and egress is an easement, and the landowner is entitled to the fair market value of his land, for such easement is imposed as if the land were taken in fee.

The majority has taken a much more drastic step than consideration of a question raised by a party for the first time on appeal. It has, in considering a question *not* raised on appeal, veritably built a straw man for the sole purpose of destroying it in order to reverse the judgment in this case.

I do not mean to say that the judgment should not be reversed. I can agree with appellants that the order of the trial court striking all of the testimony of appellants' expert witness on the issues of ingress or egress was too comprehensive, although it would have been proper, if it had been limited to striking his testimony as to the *value* of the remaining lands after the taking of the right of way. If appellants are right in their assertion that they are entitled to recover as if the entire tract had been taken in fee, there was no basis for striking this testimony. Yet, this is the exact issue that was presented to the trial court and the issue presented to us on appeal and the one this court should answer, without directing the parties to litigate other issues. I think that this witness had no fair and reasonable basis for his testimony that the property subject to the secondary easement had no value after the taking and that to hold that it did would be an unwarranted and absurd extension of the doctrine of *Baucum v. Arkansas Power & Light Co.*, 179 Ark. 154, 15 S.W. 2d 399, and other such decisions of this court. Certainly, it was never contemplated that the application appellants urge be made of a doctrine that is sound when limited to the applications we have made. So, for reasons elaborated upon elsewhere in this opinion, I think striking the expert's testimony as to the value

of the property after the taking would have been appropriate. But he did elaborate upon the disadvantages of the "ingress and egress" to the landowner. This evidence was properly admissible because a landowner has the right to show every disadvantage which his remaining property suffers by reason of a partial taking under the power of eminent domain. *Arkansas-Missouri Power Co. v. Sain,* 262 Ark. 326, 556 S.W. 2d 441; *Arkansas State Highway Com'n. v. Lewis,* 258 Ark. 836, 529 S.W. 2d 142. See also, *Arkansas State Highway Com'n. v. Wallace,* 247 Ark. 157, 444 S.W. 2d 685. He may show every element which a businessman of ordinary prudence would consider before purchasing the property. *Arkansas Power & Light Co. v. Haskins,* 258 Ark. 698, 528 S.W. 2d 407; *Kirk v. Pulaski Road Improvement District # 10,* 172 Ark. 1031, 291 S.W. 793 (on rehearing); *Pulaski County v. Horton,* 224 Ark. 864, 276 S.W. 2d 706. See also, *Little Rock Junction Ry. v. Woodruff,* 49 Ark. 381, 5 S.W. 792, 4 Am. St. Rep. 51; *Stuttgart & Rice Belt R.R. v. Kocourek,* 101 Ark. 47, 141 S.W. 511. So the court erred in striking all of the testimony of this witness on the issue of the right of ingress and egress of the power company.

There was a reason, however, for striking the testimony of the expert witness as to the value of the lands remaining after the taking of the right-of-way easement. There was no fair and reasonable basis for saying they had no value. This would mean that no informed purchaser would pay anything for the land. This is ridiculous on its face. But the approach taken by appellants and their expert was based upon an erroneous legal premise, i.e., that *Baucum* and its progeny require the taker to pay for a fee simple title for the secondary easement which, as I will presently show, is ancillary to the primary easement, i.e., the actual right of way.

In properly evaluating the issues presented to us, we must also look at the instruction given by the trial court and the objection made to it. The pertinent instruction was No. 8, which is set out in full in the majority opinion. Appellants' objection was as follows:

Defendant landowners object to the court's Instruction No. 8 which is plaintiff's requested Instruction A, for the reason that the right of ingress and egress is improperly defined as a secondary easement rather than simply an easement and for the failure of the instruction to provide

that the landowner is entitled to recover for the value in fee of the imposition of that easement and further that the part relating to future damages of the Defendant's land is couched in terms of unreasonable use whereas the landowners' right of recovery in the future is limited to Plaintiff's negligent use and that the case of *Board of Directors, St. Francis Levee District versus Morledge,* 332 Southwest Reporter 822, a 1960 case of an Arkansas Supreme Court decision as it cites *Baucum versus Arkansas Power and Light,* 179 Arkansas 154, in discussing damages stated the court should have charged the jury that full compensation for the market value and damage assessed in this suit as future damages could be recovered only for the negligent use of the right-of-way condemned and further that the Arkansas Supreme Court has established that all land secured by a taking is assessed in one proceeding and the damages to be covered must cover all future use of the condemned properties that are or should be within the condemning of the property at the time of the taking and instruction — the court's instruction in terms couched in terms of the words, "necessary or need," do not take that rule of law into consideration and the Arkansas Supreme Court having further established that the rule should be that the right of the landowner is to sue for his damages is complete and he may recover the entire damages that may be caused by the location and subsequent construction.

In that connection, and for the reasons previously stated, defendant landowner further objects to the court's refusal to give landowners' offered instruction:

"You are instructed that a right-of-way for ingress and egress is an easement, and the landowner is entitled to the fair market value of his land, for such easement is imposed as if the land were taken in fee."

Thus it is clear that appellants objected *only* to the denial of compensation as if the entire tract was taken in fee (a sort of have-your-cake-and-eat-it-too approach) and not to the nature or extent of the taking.

The holding in *Baucum* was never intended to be as comprehensive in scope as appellants urge. It has never been held that the taking of every easement requires the taker to pay the full market value of the property taken for the easement. It must be remembered that in *Baucum* the easement involved was a primary easement, i.e., "a right-of-way for an electric power transmission line." The jury in that case was instructed that the taker had "no right in the remainder of defendants' land outside the 80-foot right-of-way." There was no objection to this part of the instruction. This court adopted the Tennessee view that "where an electric light and power company, in condemnation proceedings, acquired an easement across the land of another, it became liable for the full value of the *right-of-way* as if the fee had been taken." (Emphasis mine.) We held that the trial court erred in limiting the consideration of the jury to the line as "now constructed" and "as established," "for the reason that the company acquired by the condemnation proceedings the power to make such use of the right-of-way as its future needs require for the purpose for which the right-of-way was condemned." We further said:

> The court should also have charged the jury that full compensation for the market value and damages should be assessed in this suit, as future damages could be recovered only for the negligent use of the right of way condemned.
>
> *****
>
> What we have just said does not mean that the jury in a condemnation suit should attempt to compensate the owner for livestock which might hereafter be killed or injured, but means only that if the testimony shows there is such probability, and that fact affects the value of the land not taken, the same may be considered in assessing damages. ***

Soon after *Baucum,* came *Patterson Orchard Co. v. Southwest Arkansas Utilities Corp.,* 179 Ark. 1029, 18 S.W. 2d 1028. There, it was contended that the trial court decreed to the power company a fee simple title to the strip of land constituting the right of way for electrical transmission lines. The

situation there was far different from that here, not only in the fact that only a right of way was involved, but also in the rights sought to be acquired. On this point, the court, in holding that the decree granting a right of way only created an easement, emphasized the allegations of the pleading, saying:

> *** In the amendment to the complaint it is alleged by appellee that the only use it has for the right-of-way is that it might have the right of ingress and egress for the men and equipment used in the construction and maintenance of the transmission line, and that it would not be necessary to cut and remove any peach trees, and that the cultivation and use of said land by the appellant need not be interfered with in any manner except in so far as the presence of said poles on said land would interfere with same, and, after the construction of the line, appellee would not have occasion, except in some unforeseen emergency, during the life of the poles (which was estimated to be from fifteen to twenty years), to enter upon the land, other than to send one of its men on foot along the transmission line to inspect same about twice a month; but it alleged that it desired the exclusive use of all appellant's land if it had to pay the full value of same for damages for the right-of-way acquired.

We enlarged upon the holding in *Baucum*, viz:

> *** By this decree an easement only is created, and the appellee is necessarily granted the exclusive possession of the property to the extent that such possession is necessary for the erection, operation and maintenance of its line, and to no other or greater extent. By admissions of the appellee in its amended [complaint], it is shown that the exclusive possession granted was only necessary for the time during the actual erection of the line, or in the case of some unforeseen emergency, and that the extent of the possession absolutely necessary would be only for the purpose of occasional trips of inspection by its employees. In no case can the fee simple title in its true sense be vested in the corporation exercising the right of eminent domain, for, at whatever time the purpose for which the right-of-way was taken had been ac-

complished and its use terminated, the possession and all other incidents of ownership would revert to the original owner. It is true, the necessary uses for a parcel of land condemned may be of such nature as to preclude any possession except that of the corporation exercising the right to condemn, and to that extent an estate in the nature of a fee would be acquired; as, for instance, a railroad corporation might condemn a plot of ground for a depot. The purpose for which this land would be used would be such that the owner could not exercise any possession over it that would be consistent, and not interfere, with the rights of the railroad company, so that it would necessarily have the exclusive possession for all purposes. But in all other cases, except such as of the nature of the possession stated just above, the owner would have also the right to the possession, subordinate to the paramount possession of the condemnor, and might exercise any and all rights of ownership, except such as were inconsistent, and an interference, with the easement granted.

In the instant case the appellee has the exclusive possession of the strip of land taken for all purposes necessary to carry into effect and maintain the transmission line, and to no other extent. ***

The rationale of *Baucum* has uniformly been applied only to the right of way proper, i.e., the land actually embraced within the right-of-way easement — that strip or parcel of land *actually taken* for the construction of the power line, gas line or other such improvement. See *Texas Illinois Gas Pipeline Co. v. Lawhom*, 220 Ark. 932, 251 S.W. 2d 477; *Arkansas Power & Light Co. v. Morris*, 221 Ark. 576, 254 S.W. 2d 684. See also, *Lazenby v. Arkansas State Highway Com'n.*, 231 Ark. 601, 331 S.W. 2d 705. *Baucum* was not actually a case of first impression in Arkansas, except as to electrical power line rights of way. The earliest case was *Railway v. Combs*, 51 Ark. 324, 11 S.W. 418, where a railroad right of way, running diagonally across the landowners' farm, was taken. This case was cited in *Baucum*, and it, too, was based upon the premise that the company had the right to exclusive occupancy of the land condemned, whenever necessary to the proper operation of

the railroad, leaving nothing of appreciable value to the owner.

The decision in *State ex rel Publicity & Parks Com'n.* v. *Earl,* 233 Ark. 348, 345 S.W. 2d 20, is really an application, rather than an extension, of the *Baucum* rule. In that case, the condemnor asked to condemn a 350-foot-wide strip of land in fee for an airstrip runway and a permanent easement over a 400-foot-wide strip of territory on each side of the runway in order to keep trees trimmed and prevent obstruction to air navigation. We held that the condemnee was entitled to be paid the full market value of both the 350 foot strip and the 800 foot permanent easement, because the "use of the strip destroyed permanently all use and benefit" to the landowners.

The real reason for the *Baucum* rule and its application was stated in *Arkansas Louisiana Gas Co.* v. *Burkley,* 242 Ark. 662, 416 S.W. 2d 263, where the easement condemned was an 80-foot pipeline right of way. In conclusion, we stated:

> The rule established in *Baucum,* that the landowner is entitled to receive full value of the fee for an easement of this type, tends to eliminate future litigation over damages sustained by reason of future additional construction on the easement, and should be sustained.

The proper application of the *Baucum* rule and its limitations were concisely stated in *Chicago Mill & Lumber Co.* v. *Directors of St. Francis Levee District,* 236 Ark. 322, 366 S.W. 2d 184, thus:

> \*\*\* Under our law it is firmly settled that when a permanent easement is taken by eminent domain, depriving the owner of the use of the property, the compensation must equal the full value of the land, as if a fee were being acquired. \*\*\*

The limitation of *Baucum* to right of way is significant. Right of way, in the sense used in these cases, is: "The land, other than storage or station yards, occupied by a railroad for its tracks, especially for its main line; also, the strip of land over which a public road is built, or the strip over when an electric power transmission line passes." Webster's New Inter-

national Dictionary, 2d Ed. The language of the opinions in *Baucum* and its predecessor, and subsequent cases, shows clearly that this is the meaning accorded to right of way.

The appropriate distinction and limitation of the *Baucum* rule were made quite clear in *Minkowitz v. City of West Memphis,* 241 Ark. 207, 406 S.W. 2d 887. In that case, the city condemned the landowners' property to establish a clear zone, or avigation easement, in connection with the city's airport. The landowners relied upon *Baucum, Morris* and *Earl,* in contending that they were entitled to the full value of the land acquired in the easement. We pointed out that the fee to the land subjected to the easement remained in the landowners and that the great weight of the evidence showed that it was useable to a large degree. In addressing the measure of the landowners' compensation, and approving an instruction which permitted the landowners to recover only the difference in value of the property involved immediately before and immediately after the restrictions were placed or imposed on the property, we said:

> In situations such as obtain here the well established rule appears to be that the land owner is entitled to recover the difference in value of the land before and after the imposition of the restrictions. ***

We also distinguished the cases relied upon by appellant, saying:

> In our opinion the above decisions are not in conflict with the result we have reached, since they are distinguishable on the facts from the case here under consideration. Here, as pointed out previously, appellants' entire use of the land has not been taken, nor can it ever be taken without remuneration. This is not the situation in the cited case. In the *Baucum* case the court pointed out " *** that the company acquired by condemnation proceedings the power to make such use of right-of-way as its future needs required ***." In the *Morris* case we made the same statement quoted above. In the *Earl* case, which also involved the taking of land near the landing strip for airplanes there appears this distinguishing sentence: "The court" — (sitting as a jury)

— "concluded that appellants' use of the said strip destroyed *permanently all use* and benefit to appellees, and therefore appellees should be paid full value".

In *Arkansas Power & Light Co.* v. *Mayo*, 244 Ark. 435, 425 S.W. 2d 531, where a *right of way* 125 feet wide and 1572 feet long was condemned, we expressed a preference for the following instruction on the measure of the landowners' compensation:

"You are instructed that the compensation to which the defendants are entitled in this cause is the fair market value of the lands within the right of way determined as of the date of taking, together with the difference, if any, in the fair market value of the remainder of the lands immediately before and immediately after the taking."

I have no quarrel with the *Baucum* rule when properly applied, even though it seems to be a minority rule. See *Arkansas Power & Light Co.* v. *Mayo*, supra (Fogleman, J., dissenting). But as pointed out in *Minkowitz*, it has no application to a case such as this. Extending it to apply to secondary easements would result, in my opinion, in an absurdity and totally ignore the rationale of *Baucum* and other such cases. Since the evidence clearly showed that the secondary easement was not a right of way, and that, while it might result in some restrictions upon the landowners' use of the property, it obviously did not leave them with no rights of appreciable value in their lands outside the right of way. It is for this reason the expert witness had no fair and reasonable basis for the zero value he placed upon those lands. His valuation was obviously arbitrary and plucked from the air just as surely as were the obviously excessive values assigned by the landowner in *Arkansas State Highway Com'n.* v. *Stanley*, 234 Ark. 428, 353 S.W. 2d 173, 4 ALR 3d 749.

As a matter of fact, the power company acquired the secondary easement, as limited by the trial judge, as an incident to acquisition of the right of way, without any necessity for taking it by the exercise of eminent domain. 2 Thompson on Real Property, (Perm. Ed.) 343, § 676 (611); Gale on Easements (10th Ed.), Chapters II & III, pp. 442-454; 25

Am. Jur. 2d 492, Easements & Licenses, § 86; 28 CJS 754, Easements, § 76b; 3 Powell on Real Property 34-181, § 415; Restatement of the Law, Property (Servitudes) 3004, § 480. A fuller quotation from Thompson than that contained in the majority opinion is enlightening. The author said:

§ 676 (611). "Secondary easement" defined. — The right to enter upon the servient tenement for the purpose of repairing or renewing an artificial structure, constituting an easement, is called a "secondary easement," a mere incident of the easement that passes by express or implied grant, or is acquired by prescription. The owner of the dominant estate may enter on the servient tenement, and there do any act necessary for the proper user of the easement. This secondary easement can be exercised only when necessary, and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement. The grant of the easement carries with it by implication whatever incidental right is necessary to its beneficial enjoyment, provided the grantor has power to bestow it. *** He may enter the servient tenement to make repairs, and use such tenement for this purpose to a reasonable extent; doing no unnecessary injury to the servient estate. The owner of the dominant tenement can make no alterations in his mode of enjoying the easement which will increase its burden. He has no right to commit a trespass upon the servient tenement, as he does when he enters upon the tenement and extends a ditch, which he has the right to maintain, either by grant or prescription, beyond the limits fixed by the grant or by use. ***

The same author further said:

§ 678 (613). Extent of right to make repairs. — One having a right of way may repair or improve same, provided in so doing he makes no material change in the state and condition of the soil, or does not disturb or interfere with the estate or privileges of other persons therein. In making repairs the owner of the easement can not increase the burden or enlarge the character or extent of the use. *** When an easement or other property right is created, every right necessary for its enjoy-

ment is included by implication. *** The right to repair · includes, as a matter of course, the right to enter, at reasonable times, to make such repairs. ***

It is also clear that appellants' objection to instruction No. 8 was not well taken and that the instruction requested by appellants was not correct.

The right of way for a transmission line includes the right to service and maintain the line. *Moore* v. *Indiana & Michigan Electric Co.*, 229 Ind. 339, 95 N.E. 2d 210 (1950); *Youngstown Steel Products Co.* v. *City of Los Angeles*, 229 P. 2d 814 (Cal. App., 1951); *Papa* v. *Flake*, 18 Ariz. App. 496, 503 P. 2d 972 (1972). It has been held that a power company may have a right of way of necessity across the owner's remaining lands from the public highway to repair and maintain its transmission line, by operation of law and as a matter of public policy. *Moore* v. *Indiana & Michigan Electric Co.*, supra. The right of access (or ingress and egress) to the right of way for such purposes as repair and maintenance is a secondary easement necessary for the full enjoyment of the primary easement. *Youngstown Steel Products Co.* v. *City of Los Angeles*, supra; *Otter Tail Power Co.* v. *Malme*, 92 N.W. 2d 514 (N.D., 1958); *Shrull* v. *Rapasardi*, 33 Col. App. 148, 517 P. 2d 860 (1973). See also, *Papa* v. *Flake*, supra; *Ricenbaw* v. *Kraus*, 157 Neb. 723, 61 N.W. 2d 350 (1953); 28 CJS 754, Easements § 76b; *Anderson* v. *Southern California Edison Co.*, 77 Cal. App. 328, 246 P. 559 (1926). It has been widely recognized that this right of ingress is an incident to the taking of a right of way for the construction of a power transmission line. *Papa* v. *Flake*, supra; *Otter Trail Power Co.* v. *Malme*, supra; *City of Gilroy* v. *Kell*, 67 Cal. App. 734, 228 P. 400 (1924); *Anderson* v. *Southern California Edison Co.*, supra.

The secondary easement described by appellee in its complaint was a "textbook" description of the secondary easement acquired as an incident to a right-of-way easement. It is quite clear that such an unlocated easement of ingress and egress may be acquired by eminent domain, as appellee sought to do here. *Moore* v. *Indiana & Michigan Electric Co.*, supra; *Virginia Electric & Power Co.* v. *Webb*, 196 Va. 555, 84 S.E. 2d 735 (1954); *Otter Tail Power Co.* v. *Malme*, supra. The trial court's limitation of that easement certainly did nothing

to make the burden on appellants more onerous than that which would have been imposed by the easement sought. Thereafter, appellants were satisfied to seek recovery of the full value of the entire tract.

The appellee in this case faced the reality of the situation and, by its pleading, asserted its need for the secondary easement and correctly recognized that appellants were entitled to compensation for the right of ingress and egress by virtue of the unlocated secondary easement which was incident to its right-of-way easement. See *Otter Tail Power Co.* v. *Malme,* supra; *Tennessee Gas Transmission Co.* v. *Million,* 314 Ky. 137, 234 S.W. 2d 152 (1950); *Tennessee Gas & Transmission Co.* v. *Jackman,* 311 Ky. 507, 224 S.W. 2d 660 (1949). This is consistent with our decisions in such cases as *Minkowitz* v. *City of West Memphis,* 241 Ark. 207, 406 S.W. 2d 887.

The landowner as the owner of the servient estate is not left at the mercy of the utility company when an easement such as that sought by appellee is granted. A California court put the matter in proper perspective. In *Youngstown Steel Products Co.* v. *City of Los Angeles,* supra, it said:

> In the case of the grant of an easement the law is alert to protect the right of the owner of the servient tenement to make any use of his land which does not constitute an unreasonable interference with the easement. Every incident of ownership not in conflict with the easement is reserved to the servient tenement. ***

See also, *Anderson* v. *Southern California Edison Co.,* supra; *Knudson* v. *Frost,* 56 Colo. 530, 139 P. 533 (1914); *Davis* v. *Arkansas Louisiana Gas Co.,* 248 Ark. 881, 454 S.W. 2d 331; *Southwestern Bell Telephone Co.* v. *Davis,* 247 Ark. 381, 445 S.W. 2d 505.

The holder of the right of way is not permitted to roam at will over the property of the landowner, but is held to a reasonable use of the secondary easement, at reasonable times, in a reasonable manner, upon a direct, practical route and for the exclusive purpose for which the secondary easement exists. *City of Gilroy* v. *Kell,* supra; *Otter Tail Power Co.* v. *Malme,* supra; *Anderson* v. *Southern California Edison Co.,* supra.

See also, 28 CJS 754, Easements, § 76b; Annot., 169 ALR 1147, 1148, et seq; *Knudson* v. *Frost,* supra.

The owner of the right of way may not inflict unnecessary injury upon the servient estate. *Otter Tail Power Co.* v. *Malme,* supra; *Anderson* v. *Southern California Edison Co.,* supra; *Ricenbaw* v. *Kraus,* supra; 28 CJS 754, Easements, § 76b. Accord, *Davis* v. *Arkansas Louisiana Gas Co.,* supra. When the condemnor uses the easement for any purpose inconsistent with that for which it was acquired it becomes a trespasser to the extent of the unauthorized use and is liable to the servient owner for all damages which result therefrom. *Otter Tail Power Co.* v. *Malme,* supra; *Youngstown Steel Products Co.* v. *City of Los Angeles,* supra; *Tennessee Gas Transmission Co.* v. *Million,* supra. See also, *Southwestern Bell Telephone Co.* v. *Davis,* supra.

The majority's statement that Southwest did not seek or acquire a secondary easement, but did acquire "a separate and distinct right of ingress and egress over all the Loyd's property," is incomprehensible to me, even if consideration of the question is limited only to the preceding content of the majority opinion. The statement that there was a taking of an undefined right of ingress and egress over all the Loyds' property is not fully warranted or supported. The order awarding appellee possession contained the limitation by the trial court set out in the majority opinion, with the additional limitation that the ingress and egress was limited to "the purpose of maintaining the aforementioned transmission lines and facilities." The judgment entered after trial awarded the right-of-way "together with the right of reasonable ingress and egress, to the extent necessary over and across other lands (the remaining lands) owned by the said Defendant, . . . . . for the purpose of maintenance and operation of said transmission line and facility which are constructed on [the right-of-way]." This is not a "blanket" right of ingress or egress. There are very real limitations upon this right. The words "reasonable" and "to the extent necessary" are real limitations upon the ingress and egress.

The landowners did not attempt to show that the taking is arbitrary or excessive, or that the condemning authority has been guilty of fraud, bad faith or a gross abuse of discre-

tion. *Gray* v. *Ouachita Creek Watershed District,* 234 Ark. 181, 351 S.W. 2d 142; *State Highway Commission* v. *Saline County,* 205 Ark. 860, 171 S.W. 2d 60; *Wollard* v. *Arkansas State Highway Com'n.,* 220 Ark. 731, 249 S.W. 2d 564; *Cloth* v. *Chicago, R.I. & P. Ry. Co.,* 97 Ark. 86, 132 S.W. 1002, Ann. Cas. 1912C 1115; *Railway Co.* v. *Mitchell,* 57 Ark. 418, 21 S.W. 883, 20 LRA 434.

I would reverse the judgment because of the scope of the order excluding testimony by the expert witness, and leave further proceedings to the litigants.